PIETSCH, Plaintiff and Appellant, vs. GROHOLSKI, Defendant and Respondent: MILWAUKEE AUTOMOBILE INSURANCE COMPANY, Limited, Mutual, Interpleaded Defendant and Appellant.

*June 9—July 12, 1949.*

304

For the appellants there were briefs by *D. J. Regan,* attorney, and *Bender, Trump & McIntyre* of counsel, all of Milwaukee, and oral argument by *Mr. Regan* and *Mr. Eugene L. McIntyre.*

*Arlo McKinnon* of Milwaukee, for the respondent.

FAIRCHILD, J.    Plaintiff and defendant both base their arguments primarily on inferences from the physical facts. Plaintiff claims that defendant's speed was excessive and that he failed to stop at the arterial and that this is shown by the position of and damage to the cars.   He points out that the Oldsmobile was damaged mainly on the right side and that the damage to the Ford was in the front.   That the engine of the Ford was damaged more on the left than on the right, he urges, was caused by the fact that the driver of the Ford attempted to turn to the right just before the collision.   Plaintiff further argues that the position of the cars after the accident is evidence of defendant's negligence.   If the heavier Oldsmobile had been speeding and had struck the Ford, plaintiff claims that it would have brushed the Ford aside to the west and continued on its course south.   Instead the cars went twenty feet east of the center of Highway 100 and would

have gone farther if their movement had not been stopped by the tree around which the Oldsmobile was wrapped. Therefore, it is contended that these facts are consistent with a theory that the defendant was speeding, went through the stop sign, and ran into the plaintiff.

Defendant relies on the same facts, under a different interpretation, to prove his contention that the Oldsmobile was speeding. He points to the fact that the Ford engine was pushed from the left to the right, and not pushed in, as showing that the Ford was struck from the left instead of running head on into the other car. If it had struck the Oldsmobile, the engine would have been pushed back or in. The damage to the Oldsmobile on the right front side is explained by the fact that the Oldsmobile, according to the testimony of witness Grant Fragstein, swerved to the left so that its right front side struck the Ford. The Ford, the defendant argues, had stopped at the arterial, had advanced but slightly into the intersection, and did not have sufficient speed to get out of the way before it was struck by the plaintiff's Oldsmobile, which carried it along in a southeasterly direction. The cars went sixty-six feet south and only twenty feet east. Defendant accounts for this twenty-foot deviation to the east by the swerve of the Oldsmobile to the east just before the impact.

The human testimony concerning the events prior to the accident is only in regard to the speed of the Oldsmobile. It consists of the testimony of Mr. and Mrs. Fragstein which is in conflict with that of Mr. and Mrs. Hyland. As appears in the statement of facts, the Hylands, who were about a mile behind the Oldsmobile and going in the same direction, testified that its speed was thirty to thirty-five miles per hour as it went up the incline of the overhead bridge. They could not see it as it descended. The Fragsteins, who were traveling in the opposite direction from that of the Oldsmobile and were south of the intersection, testified that the speed of the Oldsmobile was sixty to seventy miles per hour as it came

down from the crest of the bridge. However, Mr. Hayes, a private detective, testified that when he interviewed Mr. Fragstein on February 28, 1947, about two months after the accident, Fragstein stated that he did not see the Oldsmobile until it swerved left at the intersection. The credibility of Fragstein's testimony was for the jury to determine. Evidently they accepted that testimony as true. It is a reasonable finding in view of the fact that parts of the Ford were torn off and scattered sixty-five to seventy-five feet south of the center of the intersection.

With this evidence and these inferences in mind we now turn to plaintiff's contentions on this appeal. The first is that the plaintiff was not negligent as a matter of law. It is considered that clearly this was a question of fact for the jury and that its findings are supported by evidence.

Since the jury found that plaintiff was negligent as to speed, his argument, that he was not negligent as to management and control because he was not speeding, is ineffective. Furthermore, plaintiff admitted that he did not reduce his speed when approaching the intersection. As to the question of lookout, the plaintiff admits that he was not watching. He knew that this was a dangerous intersection, but admits that he did not have it in mind and, therefore, neither slowed down nor looked. He admits that he did not see the Groholski Ford except for a flash of light just before the collision. The physical facts are not so clear that it can be said, as a matter of law, that the defendant's fault was the cause of the accident.

Plaintiff's second contention is that, even if he were negligent as found by the jury, the defendant was at least as negligent, as a matter of law, in not stopping for the arterial. Plaintiff again bases this assertion on the physical facts. In particular, he points to the skid mark which was mentioned in the statement of facts. This mark began at the west edge of Highway 100, ran east along the center line of Silver Spring road for about nine feet, and then southeast for two

to six feet. Plaintiff argues that the only explanation for this mark is that defendant's car was speeding and failed to stop for the arterial. It is urged that, when the driver noticed plaintiff's car, he slammed on the brakes when it was too late. The Ford skidded forward nine feet where it collided with the Oldsmobile.

Defendant contends that the driver of the Ford stopped at the arterial sign, which was thirty-five feet from the west side of Highway 100. He started out from there, observing no cars two hundred feet north when he was at the west edge of Highway 100, and was out into the intersection when he realized that he was trapped by plaintiff's car, which had been at the summit of the overhead bridge when the Ford was coming into the intersection. Plaintiff, traveling at sixty-five to seventy miles per hour as testified by Fragstein, could come that distance in four to six seconds. Because his speed was low, all the driver of the Ford could do was jam on his brakes and hope that the driver of the Oldsmobile would have sufficient control of his car to enable him to drive around the Ford.

Unless, by virtue of circumstances disclosed, the evidence brings a reasonable inference that the driver of defendant's car was proceeding with due care, it would be necessary to hold that there was some contribution to the consequences properly assessable against defendant. To give plaintiff the benefit of this liability, it must appear that there was a failure on defendant's part to exercise ordinary care. It being determined that plaintiff was not exercising ordinary care, *i.e.,* he was driving at an excessive rate of speed and was not keeping a proper lookout, the jury examined the question of defendant's negligence in the light of those facts under the rule governing the burden of proof. Their conclusion was approved by the learned trial judge.

The defendant was under obligation to stop at the arterial sign and not to enter the intersection if the oncoming car was

so near as to prevent him from proceeding safely. The evidence is that defendant could see to the north at least two hundred feet from the edge of the highway. Assuming reasonable lookout on plaintiff's part, defendant could then proceed with reasonable expectation that he had a right to do so. His view of the approaching car would not necessarily disclose the high rate of speed of plaintiff. To assume that defendant was guilty of negligence, as a matter of law, would be beyond our duty or power.

From a point slightly south of the crest of the overhead, the plaintiff at his rate of speed would, thus, without right on his part, enter the intersection within four seconds from a point beyond the two-hundred-foot point. It is understood how the jury, in exercising a sound judgment, concluded that the excessive speed, in addition to the resulting behavior of the cars—the skid marks, the position of the cars after the collision—warranted a finding that plaintiff was responsible for the collision.

Plaintiff asks for a new trial in the interests of justice on two grounds: (1) He claims the damages were excessive because the jury awarded $26,170.50 for personal injuries, and defendant in his cross complaint and counterclaim only asked for $25,000. The fact that the jury awards damages somewhat in excess of the amount prayed for is not error in itself. If the amount is not excessive, if it has a true relation to the injuries sustained, the jury verdict will stand.

The damages cannot be said to be excessive. It is undisputed that at the age of twenty-three defendant had suffered a fifteen to twenty per cent total disability excluding injury to his brain. There was competent medical testimony, which the jury could, and did, believe, that defendant had suffered a severe brain injury as a result of the accident. This caused loss of memory, frequent vomiting, dizziness, early onset of fatigue, and changes of personality, which would be permanent. There was also competent medical testimony that the

defendant would have permanent pain from his injuries. The fact that the defendant died on December 25, 1948, as a result of his injuries can have no effect on the damages as determined at the trial.

(2) Plaintiff claims that the finding of the jury that the defendant was not the driver of his own car is evidence of passion and prejudice on the part of the jury. He contends that there was no evidence to support that finding and, therefore, the jury found that way in order to insure defendant's recovery. We are not so sure that that is the only inference which can be drawn from the jury finding. The jury might properly have found that, because there was no evidence that defendant was driving his own car, he was not. In the absence of any showing of prejudice, the fact that there may be other reasons for the jury finding cannot be disregarded.

It should be pointed out here that the determination of who the driver of the Ford was has no bearing on the result of the case since the driver would be defendant's agent.

It is considered that there is no error which requires the granting of a new trial.

*By the Court.*—Judgment affirmed.