SCHWARTZ and another, Appellants, vs. SCHNEURIGER, by Guardian, and another, Respondents.

*March 10—April 5, 1955.*

538

For the appellants there were briefs by *Johns, Roraff, Pappas & Flaherty* of La Crosse, for Clarence G. Schwartz, and by *Steele, Mau & Toepel* of La Crosse, for the Home Mutual Casualty Company, and oral argument by *Daniel T. Flaherty* and *Eugene A. Toepel*.

For the respondents there was a brief by *Hale, Skemp, Nietsch, Hanson & Schnurrer* of La Crosse, for Anton Schneuriger, and by *Donovan, Gleiss, Goodman, Breitenfield & Gleiss* of Sparta, for the Farmers Mutual Automobile Insurance Company, and oral argument by *William M. Gleiss*.

BROADFOOT, J. Fifteen assignments of error are made by the appellant, as follows:

"1. Anton Schneuriger was negligent with respect to position on the highway as a matter of law.

"2. As a matter of law, Clarence G. Schwartz was not negligent with respect to position on the highway, there being no credible evidence to sustain such finding.

"3. There is no evidence whatsoever that Schwartz's lookout was not proper.

"4. There is no credible evidence in the record to support the jury's finding that Schwartz was negligent as to management and control.

"5. Jury finding that Schwartz was negligent as to both lookout and management and control constitute duplicitous findings which render the comparison of negligence inaccurate and requires a new trial.

"6. The credible, competent testimony that Schwartz was under the influence of intoxicating liquor was, as a matter of law, insufficient to sustain a finding of negligence in that respect.

"7. Jury finding that Schwartz was negligent as to driving under the influence, lookout, and management and control constitute duplicitous findings which render the comparison of negligence inaccurate and require a new trial.

"8. Jury finding that Schwartz was negligent as to both management and control and position on the highway con-

stitutes duplicitous findings which render the comparison of negligence inaccurate and requires a new trial.

"9.   The trial court erred in its rulings on the admission of evidence.

"10. A new trial should be granted in the interests of justice.

"11. The trial court erred in refusing to give the instruction requested by Clarence G. Schwartz relating to the factual inference of negligence arising out of the presence of a vehicle on the wrong side of the highway and the requirement placed upon the driver to meet that inference of fact by presenting a reasonable explanation which the jury felt bound to accept.

"12. The trial court erroneously instructed the jury with respect to the legal requirements necessary for the finding of a driver negligent as to driving under the influence of intoxicating liquor.

"13. The damages awarded to Anton Schneuriger were excessive.

"14. The trial court erred in granting to Schneuriger judgment for damages for his personal injuries in excess of the demand of his complaint without a condition for a new trial on the issue of damages.

"15. A new trial should be granted because the jury verdict is manifestly the result of bias and prejudice."

The first four contentions can be considered together. In addition to the testimony given upon the trial, the jury had before it 11 large, clear photographs taken soon after the collision that show the damaged portions of the two automobiles and the location of the cars after the accident. The jury also had before it two maps of the immediate scene of the accident, one being drawn on a larger scale than the other. Also introduced in evidence were cardboards cut to scale representing the two cars. There was testimony as to the weight of the two cars. The survey from which the maps were made was completed while the gouge marks, testified to by the various witnesses, were still visible upon the highway and they were indicated upon the maps. It is undisputed that these gouge marks were made by the broken

right front wheel of the Chevrolet car. The jury was entitled to draw inferences from the physical facts shown by the various exhibits. The oral testimony was in direct conflict so that each of the four contentions was a matter for determination by the jury. The usual motions were made after verdict and the trial court approved the findings of the jury. A careful review of the record indicates that there was sufficient testimony, together with reasonable inferences to be drawn by the jury from the physical facts, to support its findings.

Contentions 5, 6, and 7 can also be considered together. The only question in the verdict to which objection was made was that inquiring as to the negligence of Schwartz with respect to driving while under the influence of intoxicating liquor. The objection was made that there was no competent testimony in the record upon which a jury could arrive at an affirmative answer to that question. No other contention was made as to the propriety of the question, and in particular nothing was said with reference to duplicity. Proper objections to the form of the verdict should be made before it is submitted to the jury in order to preserve issues as to duplicity embraced in the questions upon appeal.

With respect to contention 6 the finding of the jury that Schwartz was negligent with respect to driving while under the influence of intoxicating liquor depends to a large extent upon the competency of certain evidence that was received upon the trial. In addition to the testimony of various witnesses that they smelled liquor upon the breath of Schwartz soon after the accident, there were offered the depositions of Dr. Van Hecke of Milwaukee and his technician. Both Schwartz and Schneuriger were taken to the St. Francis hospital at La Crosse after the accident. A blood sample was taken from the arm of Schwartz and this sample was forwarded to Dr. Van Hecke at Milwaukee with instructions to test the same for alcoholic content. Samples were also taken from Schneuriger and Branson and sent to Dr. Van Hecke

at the same time. In their depositions both Dr. Van Hecke and his technician stated that Schwartz's blood showed 0.150 per cent of ethyl alcohol by weight. The depositions were opened at the trial and it was then discovered that two exhibits, being the card records of the tests of the blood samples of Schwartz and Schneuriger which had been marked but not introduced as exhibits, were not attached to the depositions. The result of the tests, however, had been stated by the deponents after referring to the cards in question and the results appear in the depositions. We can see no error in that respect. The court commissioner could not properly attach anything to the depositions by way of exhibits that were not introduced in evidence at the time of the taking thereof.

The appellant also contends that the results of the blood tests were not admissible in evidence because not taken within two hours of the time of the arrest, citing sec. 85.13 (4), Stats. So far as the record is concerned, Schwartz was never arrested upon any charge. In civil actions this court has stated that expert testimony based upon the percentage of alcohol in the blood is admissible to determine intoxication. *Kuroske v. Aetna Life Ins. Co.* 234 Wis. 394, 291 N. W. 384.

It is also contended that evidence relating to the blood test was not admissible because there was no corroborating physical evidence of intoxication. If in a civil action corroborating evidence is necessary, there was testimony by several witnesses that they smelled intoxicating liquor on the breath of Schwartz. There was also testimony by other witnesses that they did not smell intoxicating liquor upon his breath. If the jury wished to believe the witnesses who testified in the affirmative, that would be corroborating evidence of intoxication. Also his method of driving as found by the jury would be further corroborating evidence.

When the persons injured in the accident reached the St. Francis hospital in La Crosse, the outpatient department there telephoned Dr. John Skemp and informed him that

some people had been hurt. He had been advised that the coroner wanted blood samples taken from the injured parties for the purpose of having the same examined for alcoholic content. Before Dr. Skemp was called as a witness, Schwartz had testified that he had consented to the taking of the sample freely and voluntarily. When questions were asked of Dr. Skemp with reference to a smell of liquor upon the breath of Schwartz, objection was made that the witness was not competent to testify because of the provisions of sec. 325.21, Stats. That objection was sustained. Thereafter the doctor was asked if he took a blood sample from Schwartz. The same objection was made. The witness was permitted to testify that he had taken the sample; that he had discussed the matter with Schwartz; and that the sample was taken at the request of the coroner. The witness was further permitted to testify as to the manner in which he took the sample; that he placed the same in a glass vial, labeled it, and placed it in a mailing tube which he handed to the coroner. Objections were made repeatedly during the examination as to the competency of the witness to testify. The trial court indicated that he was permitting the answers because of the previous statement by Schwartz that he had given his consent to the taking of the sample freely and voluntarily. Dr. Skemp further testified that it was not necessary for him to take the blood sample in order to treat him as a patient. The taking of the sample was completed before the doctor treated the injuries of Schwartz.

The statute in question has been passed upon by this court in several cases. For example, in *Kirkpatrick v. Milks,* 257 Wis. 549, 44 N. W. (2d) 574, this court said (p. 552) :

"The terms of that statute, as the learned trial judge said, generally have been strictly followed as far as the testimony relates to information acquired which was necessary to enable the physician professionally to serve such patient. But it has always been recognized that there may exist a different

character of evidence arising from independent events which may come to the knowledge of a physician, such as evidence of acts or admissions not at all necessary to enable him to discharge the duties of his professional relation to his patient."

In *Racine v. Woiteshek,* 251 Wis. 404, 29 N. W. (2d) 752, a physician was permitted to testify as to information acquired in examining the defendant at the request of police officers. He did not treat the patient, but testified that he would have done so had he required emergency treatment.

The respondent cites *Kenyon v. Mondovi,* 98 Wis. 50, 73 N. W. 314, and *Smits v. State,* 145 Wis. 601, 130 N. W. 525, as authority for his statement that the statute only forbids a doctor from disclosing information he acquired in attending the patient that was necessary to enable him to serve such patient professionally. Schwartz contends that the factual situations in the cases cited by Schneuriger are different. That is true. The factual situations in the cases cited above are also different. Perhaps the closest factual situation is reported in *Richter v. Hoglund* (7th Cir.), 132 Fed. (2d) 748, a decision of the federal circuit court of appeals for the Seventh circuit. That action involved an automobile accident that happened in Wisconsin. In that case the injured persons were taken to a hospital operated by a Dr. Henderson for treatment. At the request of a traffic officer the doctor took certain fluid samples from the injured persons, which were sent to a laboratory for examination and analysis. After taking the samples, the doctor treated all of the injured. The testimony of the doctor in that case was admitted. When Schwartz testified that he freely permitted the taking of the blood sample, he waived the privilege granted him by the statute, if he knew the purpose. The doctor testified that he had discussed it with him. Further, the testimony of the doctor, in so far as it was obtained before he treated the patient and upon a point that was not necessary to enable him professionally to serve the patient, was admissible.

Contention 9 deals with the rulings of the trial court on the admission or rejection of evidence. For the most part they have been answered by what has been said previously in this opinion. In the other two instances we find no merit in the contentions.

The remaining contentions are in support of a motion for a new trial. We have given each of the contentions careful consideration, and will comment briefly on some of them.

Counsel for Schwartz requested an instruction based on the language of this court in *Hamilton v. Reinemann,* 233 Wis. 572, 290 N. W. 194, with reference to the operation of a motor vehicle upon the wrong side of the highway. The language therein was cited with approval in *Zeinemann v. Gasser,* 251 Wis. 238, 29 N. W. (2d) 49, and in *Kempfer v. Bois,* 255 Wis. 312, 38 N. W. (2d) 483. The instruction should have been given, either in the exact words of the court in those cases or the substance thereof. However, the jury in effect found that each driver was over the center line of the highway. The instruction requested was applicable to both drivers. The jury accepted the testimony of Schneuriger, together with reasonable inferences from the physical facts, and concluded that Schneuriger was faced by an emergency. Schwartz gave no explanation that satisfied the jury that he was justified in being over the center line. Under the circumstances, the instruction was not prejudicial.

Complaint is made also about an instruction with reference to driving under the influence of intoxicating liquor. The contention is that the instruction begged the question. It is true that the instruction was not too informative to the jury, but it did not mislead them to the prejudice of Schwartz.

It is also contended that the damages were excessive to such an extent that the award showed bias and prejudice on the part of the jury. The trial court also had this question before it in ruling on motions after verdict, and determined that the damages were not excessive and that the award was not

based on bias and prejudice. The determination of the trial court in this regard must be given weight, and we cannot say from the record that the damages were excessive or resulted from bias and prejudice.

In his complaint Schneuriger asked for $25,000 for his personal injuries. The jury awarded $27,000 for pain, suffering, disability, and loss of income, in addition to his special damages. Schwartz contends that it was error for the court to permit judgment to be entered for an amount exceeding that demanded in the complaint without giving an option for a new trial on the issue of damages. He cites as authority the following statement from *McCartie v. Muth,* 230 Wis. 604, 609, 284 N. W. 529:

"Whether in a case of contract where the damages are liquidated and the jury has assessed the damages in excess of the amount demanded, the granting of a motion to amend the *ad damnum* clause must be conditioned on granting a new trial, we need not here determine. But we consider that in a case where the damages are unliquidated, as here, the granting of the amendment should be denied except on condition of a new trial, at least on the question of damages. Where, as here, the *ad damnum* clause is as high as a jury might properly award, the new trial should be made optional with the defendant."

Schneuriger contends that the rule is correctly stated in *Pietsch v. Groholski,* 255 Wis. 302, 38 N. W. (2d) 500. There this court said (p. 310):

"Plaintiff asks for a new trial in the interests of justice on two grounds: (1) He claims the damages were excessive because the jury awarded $26,170.50 for personal injuries, and defendant in his cross complaint and counterclaim only asked for $25,000. The fact that the jury awards damages somewhat in excess of the amount prayed for is not error in itself. If the amount is not excessive, if it has a true relation to the injuries sustained, the jury verdict will stand."

The *McCartie Case* was not discussed in the *Pietsch Case,* and a casual reading might lead one to believe that there was a conflict between the two. However, it is clear that what the court said in the *McCartie Case* was that the amount demanded in the complaint was as high as the jury, from the evidence, could reasonably have awarded. In that case the amount had no true relation to the injuries sustained and the award was clearly excessive. We believe the matter is governed by the provisions of sec. 270.57, Stats., which reads:

"The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case the court may grant him any relief consistent with the case made by the complaint and embraced within the issue."

In this case there was an answer, the relief was consistent with the case made by the complaint, was embraced within the issue, and was supported by sufficient credible evidence. We have given the case careful consideration, and find no prejudicial error that would permit us to grant a new trial.

*By the Court.*—Judgments affirmed.