Fairchild, J.
 

 1.
 
 Policy defense.
 
 Klingman applied to National Indemnity Company for collision and liability insurance on March 15, 1958. He signed an application form in which the insurance agent wrote the information in the spaces provided. One of the spaces in the form was designated : “Describe all driving violations or convictions below” and in that space, the agent wrote “None.” In fact, in May, 1952, Klingman had been fined $8.95 for speeding, apparently in violation of a city ordinance, and in August, 1952, had been fined $13 for reckless driving in violation of a
 
 *303
 
 county ordinance. The agent did not recall asking Klingman the particular question. Klingman testified that he did not believe he was asked about prior convictions although in a written statement before trial he had said he may have been asked but did not recall. They agreed that the completed application was not read to, or by, Klingman. The court found that there was no proof that the false statement was made by Klingman, or that if made, it was made with intent to deceive, and that it did not increase the risk. The company challenges the court’s finding.
 

 The statement was made by Klingman in the sense that he signed an application which contained it. Under sec. 209.06 (1), Stats., no statement or representation made by the insured in the negotiation of a contract of insurance shall avoid the policy unless such statement or representation was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss. The circuit court concluded that the company had not produced sufficient proof to justify a finding that Klingman had told the agent that there had been no convictions, or that when he signed the application containing that incorrect statement, he did so with intent to deceive. We cannot say, as a matter of law, that the company sustained its burden of proof.
 

 In
 
 Polar Mfg. Co. v. Integrity Mut. Ins. Co.,
 
 ante, pp. 105, 110, 104 N. W. (2d) 164, we approved an instruction to the jury that (p. 109), “You are to determine this question [whether the risk was increased] from all the testimony received upon this trial as to what those engaged in the fire insurance business, acting reasonably and naturally in accordance with the practice usual in the insurance industry, under such facts and circumstances, would have done.” The National Indemnity Company specializes in the insurance of substandard risks, and on its rate card for
 
 *304
 
 insuring substandard private passenger cars, appears the following statement:
 

 “Any risk with
 
 more than one
 
 traffic violation and/or accident during the last three years shall be subject [to] a demerit charge for each additional violation and/or accident.”
 

 The application disclosed that Klingman’s insurance with another company had been canceled because of a bad collision loss about one month before.
 

 The amount of the fines does not indicate that the violations were serious, and under the provision quoted from the rate card, they, having occurred five or six years before, would not have required the addition of demerit charges. The company made offers of testimony of members of the underwriting firm who passed upon the risk for the company. These offers were rejected by the court. In one instance, the testimony offered was that had the witness known of the two traffic violations, she would have consulted with her superior about the issuance of the policy, and that she is unable to state definitely as to whether or not the policy would have been issued, but was rather of the impression that she would not have issued the policy. In the other instance, the offer was to show that in the event the witness had known of these violations it is possible that he might then have disapproved of the issuance of the policy. There was no error in rejecting these offers of testimony. They were in indefinite terms and did not purport to establish a probability that an insurer, acting reasonably and naturally in accordance with the usual practice in the industry, would have rejected the risk if it had knowledge of the convictions. With respect to whether the misrepresentation increased the risk, we cannot say, as a matter of law, that the company sustained its burden of proof.
 

 
 *305
 
 2.
 
 Amendment of pleadings.
 
 The complaints and cross complaints against Klingman and his insurance company did not expressly allege gross negligence. In each it was alleged that Klingman was negligent in a number of respects, such as lookout, management and control, and the like. In each an additional specification of negligence was that he operated his vehicle under the influence of intoxicating liquor. Some weeks before trial, there was a motion by the Mondors for amendment of pleadings, and just before the trial there was some discussion of whether the allegations as to operating the vehicle under the influence of intoxicating liquor would have the force and effect of a statement of a cause, of action for gross negligence. The court ruled that the specification of operation under the influence of intoxicating liquor as an element of simple negligence was not a sufficient allegation of gross negligence. In this discussion, there was mention of the possibility that a motion might be made upon the trial to amend the pleadings so as to allege gross negligence, and thus to conform to the proof. After the close of the evidence, such motions were made and were granted. The issue of gross negligence was then submitted to the jury.
 

 National Indemnity Company argues that it was an abuse of discretion to allow the amendments. Sec. 269.44, Stats., provides that the court may at any stage in furtherance of justice amend any pleading provided that the amended pleading states the cause of action árising out of the transaction upon which the original pleading is based.
 

 The only prejudice claimed to have resulted from the late amendment was that as long as only simple negligence was alleged, National Indemnity Company could hope that Mrs. Mondor would also be found negligent, and that it could then obtain contribution in the Martell action, and a reduction in the Mondor claims by reason of contributory negli
 
 *306
 
 gence, and that Klingman could expect that any judgment against him would be dischargeable in bankruptcy; that both might have been more likely to settle if gross negligence had been pleaded earlier. No surprise was claimed, either as to any item of evidence, or as to the desires of Mr. Martell and the Mondors to plead gross negligence. Proof that a plaintiff’s injuries were caused by improper driving of a defendant by reason of defendant’s being under the influence of liquor is sufficient to sustain a finding of gross negligence.
 
 Ayala v. Farmers Mut. Automobile Ins. Co.
 
 (1956), 272 Wis. 629, 640, 76 N. W. (2d) 563. In the pleadings before us, the claim with respect to the operation under the influence of liquor was not separately stated from the cause of action in simple negligence. There was no express characterization of the conduct as gross negligence, and in some of them no reference to wilfulness, recklessness, and wantonness. The evidence, however, sustained the jury answers on gross negligence. Under all the circumstances, we find no abuse of discretion in the court’s permitting the amendments.
 

 3.
 
 The urine specimen.
 
 An expert testified to the percentage of alcohol in Klingman’s blood determined by analysis of a specimen of urine. The origin of the specimen was as follows: Klingman, who had been injured and was semiconscious, was taken to the hospital after the accident, and was waiting in the hall on a cart in the presence of a nurse and two officers. This was within two hours after the collision. Klingman recalled that one officer asked him if he wanted to go to the bathroom. Klingman said he would try if he could get up, and the officers got him up off the stretcher. Fie then urinated in a bottle held by one of the officers. He was not under arrest.
 

 National Indemnity Company claims that the specimen and testimony as to the analysis were inadmissible because
 
 *307
 
 the taking of the specimen was an unreasonable search and seizure in violation of sec. 11, art. I, Const. The company relies, in part, upon
 
 State v. Kroening
 
 (1956), 274 Wis. 266, 79 N. W. (2d) 810, 80 N. W. (2d) 816. In that case, a sample of blood had been taken from defendant’s body when defendant was in a semiconscious state, and without requesting or obtaining the consent of the defendant. Defendant was not under arrest. This court held that the taking of blood from within the body without consent and without arrest was a violation of the security protected by sec. 11, art. I. The instant case is materially different. The worst that can be said is that Klingman may have urinated under the impression that the officers were helping him to make himself comfortable and in ignorance of the possibility that they were intent on obtaining evidence. In
 
 State v. Resler
 
 (1952), 262 Wis. 285, 290, 55 N. W. (2d) 35, this court held that procurement of a specimen of urine did not constitute unreasonable search and seizure. It is true that in the opinion the court pointed out that there the defendant knew the purpose for which the sample was to be used, and voluntarily submitted. While knowledge and consent would make the constitutional claim even more obviously untenable than it is here, it was not intended in the
 
 Resler Case
 
 to hold that procurement of the specimen in such manner as was done here, without knowledge of its purpose, would be unreasonable search and seizure. The cases cited were both criminal prosecutions. Because we consider that no unreasonable search and seizure was involved in any event, it is unnecessary to consider whether evidence obtained by police officers as a result of unreasonable search would thereby be rendered inadmissible in a civil action between private parties.
 

 4.
 
 Corroborating evidence of intoxication.
 
 Evidence of the chemical analysis was offered and considered under sec. 325.235 (1), Stats. Par. (c) provides:
 

 
 *308
 
 “The fact that the analysis shows that there was fifteen-hundredths of one per cent or more by weight of alcohol in the person’s blood is
 
 prima facie
 
 evidence that he was under the influence of an intoxicant, but shall not, without corroborating physical evidence thereof, be sufficient upon which to find the person guilty of being under the influence of intoxicants.”
 

 The circuit court instructed the jury that corroborating physical evidence was required in this case, although there may be some question whether the latter portion of par. (c), referring to a finding of guilty, is applicable to a civil action for damages. See
 
 Schwartz v. Schneuriger
 
 (1955), 269 Wis. 535, 542, 69 N. W. (2d) 756. National Indemnity Company argues that there was no corroborating physical evidence. Klingman’s erratic driving just before the collision would constitute such evidence.
 
 Schwartz v. Schneuriger, supra.
 
 So would testimony that at the hospital after the accident his speech was slurred, and he was slow in reacting. These elements being present, it is unnecessary to decide whether the testimony as to the amount of liquor he had consumed, his semiconscious condition after the accident (the evidence as to the type of injuries he sustained was not completely definite), or the odor of alcohol which a witness observed on his breath after the accident would, if standing alone, constitute sufficient corroborating physical evidence. There was testimony of a witness who had seen and talked with him in Stillwater, Minnesota, about 15 miles from the point of collision, approximately one hour before the collision. He stopped in Stillwater on his journey from Anoka, Minnesota, where he admitted drinking. The witness testified that he did not seem to her to be intoxicated. This testimony did not, of course, compel a finding that he was not under the influence of liquor.
 

 5.
 
 Instruction on intoxication.
 
 The circuit court instructed the jury on the subject of whether Klingman was under the
 
 *309
 
 influence of intoxicating liquor. The court first read the material portions of sec. 325.235 (1), Stats., including par. (c) previously quoted. Then the court said:
 

 “A person is also under the influence of intoxicating liquor when his conduct, his exercise of judgment, or his use of his faculties is interfered with to an appreciable extent by- the consumption of intoxicating liquor.
 
 A person is also under the influence of intoxicating liquor if it is a fact that there was fifteen-hundredths of one per cent of alcohol in his blood and there is other corroborating physical evidence as required by the statute.
 
 If you find . . . that the alcohol content was more than fifteen-hundredths of one per cent of alcohol by weight, then such amount of alcohol is sufficient to support a finding that Mr. Klingman was under the influence of intoxicating liquor at the time of the accident, if you also find that there is other corroborating physical evidence. ... If you are satisfied to a reasonable certainty by a clear and satisfactory preponderance of the evidence that John Klingman was negligent in the manner in which he managed and controlled his automobile and if you are also so satisfied that at the time John Klingman was under the influence of intoxicating liquor you should answer this question ‘Yes,’ otherwise you should answer it ‘No.’ ”
 

 We have used italics to indicate the portion of the instruction objected to by National Indemnity Company. The company asserts that this sentence was incorrect because it told the jury that the chemical analysis conclusively established the fact of being under the influence if there was any corroborating physical evidence, notwithstanding such relevant evidence as might lead to a contrary finding. If this sentence standing alone could have misled a jury in the direction claimed, it cannot have done so when it contained a reference to the statute which prescribes the effect of the evidence and had just been read to the jury, was followed by a statement that the chemical analysis plus corroborating physical evidence was
 
 sufficient to
 
 support a finding, and that unless the
 
 *310
 
 jury was satisfied to a reasonable certainty by a clear and satisfactory preponderance of the evidence that Klingman was under the influence of intoxicating liquor, the jury should answer the question “No.”
 

 With respect to the language “reasonable certainty by a clear and satisfactory preponderance of the evidence,” see
 
 Kuehn v. Kuehn,
 
 ante, pp. 15, 25, 104 N. W. (2d) 138.
 

 6.
 
 Klingman’s negligence.
 
 National Indemnity Company asserts that Klingman and the company “were entitled to a directed verdict because there was no credible evidence of negligence on the part of John Klingman.” Several other claims of error approach being frivolous. This one patently is so.
 

 7. Inconsistency in the verdict.
 
 The jury found Klingman’s gross negligence causal, and pursuant to the directions of the court omitted any answer to the questions inquiring as to his negligence. After finding Mrs. Mondor causally negligent, the jury failed to follow directions requiring an answer to the comparison question only if the questions as to causal negligence had been answered “Yes.” The jury answered the comparison question, thus apparently attributing causal (simple) .negligence to Klingman. National Indemnity Company claims that this is an inconsistency which can be corrected only by a new trial. Literally, of course, there is an inconsistency because Klingman’s conduct cannot be both gross negligence and simple negligence. We see no reason to interpret the verdict in so completely literal a fashion, however, for the laymen could understandably assume that the phrase “total negligence which caused the collision” included both “negligence” and “gross negligence.” Under the circumstances, the answers to the comparison question may be disregarded.
 

 8.
 
 Instruction on burden of proof.
 
 We have referred above to the instruction given by the court with specific reference
 
 *311
 
 to questions 1 and 2, on gross negligence. The court stated that the jury must be satisfied “to a reasonable certainty by a clear and satisfactory preponderance of the evidence.” Later on, the trial court instructed on burden of proof with respect to questions 3 to 6, and commented that the burden of proof as to questions 1 and 2 had already been explained. The court then went on to say:
 

 “This means that before you can answer such questions ‘Yes,’ you must be satisfied or convinced by a greater weight or credibility of evidence to a reasonable certainty that the question should be answered ‘Yes.’ ”
 

 Viewing the instruction as a whole, it seems clear that the instruction on burden of proof by a greater weight of evidence related to questions 3 to 6, and would not mislead the jury.
 

 With respect to the form of the statement on burden of proof as to gross negligence, see
 
 Kuehn v.
 
 Kuehn, ante, pp. 15, 25, 104 N. W. (2d) 138.
 

 9.
 
 Instruction as to driving to the right.
 
 The trial court instructed the jury as to statutes with respect to driving to the right. It then said: “These are safety statutes and ordinarily the violation of such statutes constitutes negligence.” National Indemnity Company argites that the word “ordinarily” is not sufficient to indicate to the jury that if a driver was forced by an emergency to invade the left lane in order to avoid an accident, such driving on the left side would not constitute negligence. It was Klingman and National Indemnity Company who contended that Klingman had been forced to swing to his left by reason of an emergency, and they are in no position to object to the failure to instruct more completely on the conditions under which it would not be negligence to drive toward the left. They made no request for an instruction.
 
 Blom v. Kumbier
 
 (1957), 275 Wis. 227, 234, 81 N. W. (2d) 528.
 

 
 *312
 
 10.
 
 Review of costs.
 
 After receipt of a notice of taxation and proposed bill of costs on behalf of the Mondors in the Mondor action, and a notice and proposed bill on behalf of Mrs. Mondor and her insurer in the Martell action, one of the attorneys for National Indemnity Company wrote to the clerk of the circuit court, with copy to the attorneys for the Mondors and their insurer. The letter includes the following:
 

 “There are a substantial number of items that I wish to object to and I therefore ask that the court set a time for a hearing on bill of costs when we can dispose of our objections and settle the final amount. Specifically, I wish to question the multiple tax of attorneys’ fees totaling $400, the witness charge of Goodwin Joss in the amount of $95.80, the clerk’s fees, which I think should be $8, telephone in the amount of $50.73, and transcript of testimony of the preliminary hearing. I have not computed the interest on the verdict and don’t know if the amount is correct or not.”
 

 Except for correction of the clerk’s fees, the clerk taxed the costs as proposed. Motion was made for review by the court. The court confirmed the taxation because no “formal written objections” were filed, because the letter did not state the nature of the ground of the objections, and therefore National Indemnity Company had not filed “a particular statement of his objections” as required by sec. 271.10 (3) and (4), Stats.
 

 We do not view the letter form of the objection as an infirmity. Insubstantial defects in proceedings and pleadings are to be disregarded. Sec. 269.43, Stats. We do agree, however, that the objections were not stated with sufficient particularity. The clerk’s duty to tax costs is ministerial. Unless the costs proposed are obviously unauthorized, the burden should fall on the objecting party to point out why they are not authorized or are improperly or inaccurately determined.
 

 
 *313
 
 The first objection was to multiple attorneys’ fees totaling $400. From the bill of costs, it appears that these consisted of $100 each for Mrs. Mondor and her insurer as defendants against whom cross complaints had been made in the Martell action. These cross complaints had been ordered dismissed “with costs.” In this situation, costs are discretionary with the court. Sec. 271.035 (2), Stats. The $400 further consisted of $100 each for Mr. and Mrs. Mondor as plaintiffs in the Mondor action. These items were not discretionary and were allowable as of course. In
 
 Gospodar v. Milwaukee Automobile Ins. Co.
 
 (1946), 249 Wis. 332, 24 N. W. (2d) 676, 25 N. W. (2d) 257, costs were separately allowed to six plaintiffs, three of whom were husbands of the other three and were seeking damages sustained by reason of the injuries to their wives. The reasoning of the
 
 Gospodar
 
 decision was applied in the converse situation where a defendant prevailed against husband and wife, plaintiffs, in
 
 Baldwin v. St. Peter’s Congregation
 
 (1953), 264 Wis. 626, 60 N. W. (2d) 349. There was an obvious difference between the legal situation with respect to the fees claimed in the Martell action and in the Mondor action, and the objecting party should have set forth, at least briefly, his reason for objecting to any part of the $400.
 

 The second objection was to the witness charge of Mr. Joss in the sum of $95.80. This was set forth in the proposed bill of costs as “Costs awarded by the court Goodwin Joss, witness charges of record under demand for admission Wis. Stats. 327.22.” A demand had been made upon Klingman and National Indemnity to admit certain facts, principally as to the chemical analysis of the urine specimen made by Goodwin Joss. Klingman and National Indemnity refused to admit. Mr. Joss was produced as a witness. The facts were proved, and proof was made on the trial tending to show that $95.80 was the reasonable expense of making
 
 *314
 
 the proof. No proof was offered in opposition, and we cannot find that the court ever made any order on the matter. Sec. 327.22 (4), Stats., provides:
 

 “In case of refusal to make such admission, the reasonable expense of proving any fact or document mentioned in the notice and not so admitted shall be determined by the court at the trial and taxed as costs in any event against the party so notified, unless the court is satisfied the refusal was reasonable.”
 

 National Indemnity now claims that under the circumstances, and in view of its objections to the chemical analysis heretofore mentioned, its refusal to admit was reasonable. Of course, the clerk should not have been called upon to decide this question on taxation of costs. It may well be that an objection to the item on the ground that the court had not entered any order would have been valid. But here again, the objection was not sufficiently specific.
 

 The next objection relates to the clerk’s fees, and the correction asked for was made.
 

 The next objection is to the amount of telephone bills, but no assertion was made in support thereof, and no proof offered that the amount was incorrect.
 

 The final objection was to a charge for a transcript of the testimony of a preliminary hearing. This was in the amount of $79.80, included in the proposed bill among several items under “certified copy.” It may well be, as now claimed by National Indemnity, that the costs of copies of papers of this type are not properly taxable. Counsel have cited
 
 Wisconsin Sulphite Fibre Co. v. D. K. Jeffris Lumber Co.
 
 (1907), 132 Wis. 1, 111 N. W. 237, and
 
 Mitchell Realty Co. v. West Allis
 
 (1924), 184 Wis. 352, 199 N. W. 390. The objection, however, is insufficient in not calling these authorities particularly to the attention of the clerk.
 

 
 *315
 
 The statement referring to the computation of interest can certainly not be viewed as a particular objection.
 

 National Indemnity has argued here that the allowance of $100 each to Mrs. Mondor and her insurer in the
 
 Martell Case
 
 was an abuse of discretion on the part of the court. We agree. The Mondors and the insurer were all represented by the same attorneys in both actions. The actions were tried together. The interests of Mrs. Mondor and the insurer, as defendants in the Martell action, were identical except with respect to whatever possibility there may have been of recovery against Mrs. Mondor in excess of policy limits. Under all these circumstances, it seems to us that if the court intended to award $200 rather than $100 costs to Mrs. Mondor and her insurer, it was an abuse of discretion.
 

 11.
 
 Mondor negligence.
 
 The only surviving witnesses to the collision were Klingman and Mrs. Mondor. Klingman testified that as he approached the point of collision he was in his right lane, traveling between 45 and 50 miles per hour; that at the time he took notice of the Mondor car it was in the center of the road with the lights on bright; that he swerved his car to the left when the two cars were about six car lengths apart. On adverse 'examination before trial, he had said the cars were three to four lengths apart when he first saw Mrs. Mondor’s car. Mrs. Mondor testified that as the cars approached each other, she was in her lane, traveling 40 or 45 miles per hour with lights dim; Klingman’s “car was coming in his lane going east and at about 100 feet it started going a little bit to the [south] shoulder, and about 50, 60 feet and then he turned rather sharp into my lane, then I blew the horn and went to put my brakes on but it happened so fast.”
 

 Klingman’s testimony would have sustained an answer finding Mrs. Mondor negligent with respect to position on
 
 *316
 
 the highway, but the jury answered that question “No.” No one pleaded that Mrs. Mondor failed to dim her lights; the jury was not instructed or asked any question on that matter; and it has not been argued here that she was negligent in that respect.
 

 We have searched for evidence to sustain the finding that she was negligent with respect to management and control, but cannot do so without speculation that the cars were substantially farther apart than claimed by either Klingman or Mrs. Mondor when Klingman’s conduct warned her of danger. Assuming speeds of 45 miles per hour for each, and that they were 60 feet apart when he turned in front of her, less than half a second remained before the collision. Even if the distance was six car lengths, there was less than one second, not enough time for her to do anything to avoid collision. For a somewhat-similar case, see
 
 Clark v. Mutual Automobile Ins. Co.
 
 (1957), 1 Wis. (2d) 357, 83 N. W. (2d) 873. The answers finding Mrs. Mondor causally negligent should have been changed on her motions after verdict.
 

 12.
 
 Martell damages.
 
 The jury answered $6,500 to the question as to pecuniary loss suffered by Mr. Martell because of his wife’s death, and $6,500 as to loss of society and companionship. As required by statute, the court reduced the latter amount to $2,500. Mr. Martell claims that the jury intended to award a total of $13,000, and set down the $6,500 figures by mistake.
 

 It is difficult to suppose there was any mistake. The court instructed the jury to include all pecuniary loss in answer (b) and none of it in answer (c) on loss of society. Upon return of the verdict, the court read the answers and asked if $6,500 was the answer they meant in each case. The foreman answered “Yes;” the court then asked all the jurors, and they answered “Yes.”
 

 
 *317
 
 Mr. Martell next asserts that $6,500 is so inadequate that he is entitled to a new trial. He was fifty-six years old and had a life expectancy of 16.72 years. Mrs. Martell was fifty-one years old and had a life expectancy of 20.20 years. Their three children are adults and live away from home. Calvin, the youngest is twenty-two. He completed a four-year college course and is now at the University of Wisconsin. Mrs. Martell’s main object in working out was to contribute money for him to go to school.
 

 The Martells lived on a farm where Mrs. Martell helped with the work, was employed at times in a canning factory and elsewhere, and at times took care of elderly people in her home for pay. In the last five calendar years of her life, her outside earnings averaged $1,400 per year. Mr. Martell testified he was milking 18 cows, was alone in the home, and was going to have to cut down his herd because of increased burdens.
 

 The $6,500 award is not generous. It would be inadequate if one assumed Mrs. Martell would continue to earn $1,400 per year, and would contribute all that to her husband as well as her work on the farm. It was not made clear, however, that future contributions to the son would be a pecuniary benefit to Mr. Martell, nor whether the son would soon be self-supporting. The testimony suggests that Mrs. Martell might not continue to work at the factory when Calvin no longer needed help. It is admittedly difficult to determine from evidence of past actions the amount of pecuniary benefit a person would probably derive from another in the future. We cannot say as a matter of law that this award is unreasonably low.
 

 13.
 
 Costs in this court.
 
 National Indemnity Company has not prevailed except for a $100 reduction and the failure of the Martell motion for review. We deem it not entitled to any costs in this court. The Mondors and their insurer
 
 *318
 
 have prevailed in substantial part and may tax $25 attorneys’ fees and clerk’s fees against National Indemnity Company. No other attorneys’ fees are to be taxed. The Mondors and their insurer may tax printing costs for their principal brief as respondents and cross appellants. They, Martell, and Klingman filed a joint brief and supplemental appendix on the question of the policy defense. They may tax costs for printing the brief, but not the supplemental appendix, against National Indemnity Company. Mr. Martell filed a brief on the liability issues and may tax costs for printing 15 pages thereof against National Indemnity Company. Mrs. Mondor and her insurer filed a brief in reply to the Martell brief on damages and may tax printing costs against Martell for that brief.
 

 By the Court.
 
 — In Case No. 103, Martell, plaintiff, in so far as the judgment is in favor of Martell and against Klingman alone or with National Indemnity Company, it is affirmed; in so far as it awards $200 costs to Mrs. Mondor and her insurer, National Farmers Union Property & Casualty Company, it is modified to award $100; in so far as it is in favor of Martell and against Mrs. Mondor and her insurer, it is reversed, and the cause remanded with instructions to dismiss the complaint as to them, without costs. In Case No. 104, Mondor, plaintiffs,, judgment affirmed. The order appealed from is affirmed. Costs in this court are to be taxed as set forth in the opinion.