DONLEA, Respondent, v. CARPENTER and others, Appellants.

*October 4—November 1, 1963.*

For the appellants there were briefs by *Engelhard, Snodgrass & Goerdt* of La Crosse, and oral argument by *Lawrence M. Engelhard*.

For the respondent there was a brief by *Johns, Pappas & Flaherty* of La Crosse, and oral argument by *Daniel T. Flaherty*.

FAIRCHILD, J. 1. *Defendants' contention that Donlea's negligence, as a matter of law, was at least equal to Carpenter's.* The jury must have found Donlea negligent in failing to see Carpenter approaching and in failing, as a result, to yield the right-of-way. The jury may, although there was conflicting testimony, have found that Donlea made a proper stop before entering the intersection. It undoubtedly found Carpenter negligent in failing to see Donlea come out onto the pavement of Highway 14. The evidence may also have justified a finding that Carpenter was traveling slightly in excess of the 35-miles per hour speed limit, but his speed was not so important a factor, in any event, as his failure to see.

We do not have Donlea's explanation of the event. He suffered from retrograde amnesia.

Carpenter's testimony does not help much in learning what Donlea did, although it established Carpenter's negligence as to lookout. Carpenter said he saw Donlea three times. On the first two times, Donlea had not reached the intersection; Carpenter said he then considered Donlea of no

concern to him; he was unable to say how far Donlea was from the intersection at those times, nor the speed at which he appeared to be moving. Carpenter testified that as Highway 14 curves to the left, it goes up a severe incline to the east, and he was trying to keep his power up because of the grade. He wanted to avoid putting on his brake or taking his foot off the accelerator if he possibly could. As he approached the intersection he pulled over from the right-hand lane into the left-hand lane, perhaps for some advantage in negotiating the grade. Although there were no other vehicles requiring his attention, he did not see Donlea the third time until Donlea was in front of Carpenter, with about five to 10 feet between the vehicles. The collision then occurred in a snap of the fingers. His failure to see Donlea after it should have become apparent that Donlea was going to enter Highway 14 was negligence.

Mr. Russell Loeser, with his wife as a passenger, was driving behind Carpenter. Both testified that Donlea stopped some distance before reaching the edge of Highway 14. Mrs. Loeser put the stop at about 70 feet before Donlea reached Highway 14, and Mr. Loeser at some 20 to 50 feet. Both said Donlea's car rolled forward and onto Highway 14 very slowly; Mr. Loeser estimated Donlea's speed at two to five miles per hour, and he thought the windshield of the Donlea car was about even with the line between the two lanes at the time of impact. Mrs. Loeser said that the accident appeared like a movie in slow motion. Mr. Loeser estimated that eight to ten seconds elapsed between the time he first saw the Donlea car and the impact. Although there had been about 60 feet between Loeser's car and Carpenter's trailer at the beginning of that interval, Loeser slowed down because of his observation of what was happening and

turned off the highway a substantial distance before reaching the point of impact.

Defendants contend that if Donlea stopped, he stopped in a place which would not comply with sec. 346.46 (2) (c), Stats. There was no clearly marked stop line, nor marked or unmarked crosswalk at the intersection. Accordingly the statute required that the stop be made "at such point as will enable him to efficiently observe the traffic on the intersecting roadway." The jury had before it several maps and a series of photographs of this intersection. From them it could reasonably find that Mr. Donlea stopped at a point when he could make the required observation, although we are aware from hindsight that he made a tragic mistake.

The jury was not required to believe the testimony of another witness that Donlea's car never stopped and pulled into Highway 14 at a high rate of speed.

The jury could reasonably find that had Carpenter been keeping a sufficient lookout, it would have become clear to him that Donlea was not going to yield the right-of-way long enough before impact so that he could have slowed his vehicle or altered his course enough to avoid the collision. This follows from the slow rate at which Donlea moved and from the fact that after the Loesers, who had been 60 feet behind Carpenter, realized what was happening, they had no difficulty in slowing down and turning off the highway a substantial distance, apparently some 200 feet, back from the point of impact. It would follow from the Loeser testimony that Carpenter's failure to keep a sufficient lookout was causal.

"The court is particularly loath to overturn a jury verdict on the comparison of the negligence between a plaintiff and a defendant. *Niedbalski v. Cuchna* (1961), 13 Wis. (2d) 308, 318, 108 N. W. (2d) 576. It is only in unusual fact situations that the court will disturb the jury's comparative-

negligence answers. *Mullen v. Reischl* (1960), 10 Wis. (2d) 297, 305, 103 N. W. (2d) 49." [1]

This was not a right-angle intersection where a driver suddenly came onto an arterial highway from the side road, in front of the vehicle he failed to see. A county traffic officer testified that he considered the intersection a dangerous one. Carpenter had traversed it frequently, Donlea rarely. As Carpenter first approached, he was traveling in his right-hand lane, from which, by following a gentle curve to the right, he could have continued south on Highway 35 without crossing Donlea's path. If Donlea looked to his left while Carpenter was still in that lane, he may have mistakenly concluded Carpenter intended to follow Highway 35. Donlea also was required to look for vehicles coming on Highway 14 from the east. To do so, he had to look to his right and at an angle to the rear. He may have been preoccupied with a lookout in that direction as he edged into the intersection. Carpenter, meanwhile, was failing to see what he could easily have seen, because of his preoccupation with maintaining his speed up the grade. We cannot say as a matter of law that the jury was wrong in placing a slightly heavier responsibility upon Carpenter than upon Donlea.[1a]

*2. Erroneous instruction.* After apparently completing the instructions to the jury, the circuit court followed the commendable practice of asking counsel to call attention in chambers to desired additions or corrections. After consultation the court gave two additional instructions. One was that the breach of safety statutes constitutes negligence as a matter of law. Then the court instructed:

---

[1] *Maus v. Cook* (1961), 15 Wis. (2d) 203, 206, 112 N. W. (2d) 589.

[1a] Because of the peculiarities of this intersection and the testimony of Mr. and Mrs. Loeser, we do not consider *Schlueter v. Grady* (1963), 20 Wis. (2d) 546, 123 N. W. (2d) 458, as controlling.

". . . That in the operations on the highway, the driver should not turn a vehicle from a direct course, or move right or left upon a roadway unless and until such movement can be made with reasonable safety. In the event any other traffic may be affected by such movement, no person shall so turn any vehicle without giving an appropriate signal in the manner provided in section 346.35. Such signal shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning."

The quoted instruction (based on sec. 346.34 (1), Stats.) could only refer to testimony concerning the operation of the Carpenter vehicle. Both Carpenter and Loeser had testified that Carpenter moved either wholly or partially from his right-hand lane to his left-hand lane as he approached the intersection. He gave no signal of such movement.

We conclude, however, that this portion of the statute is designed to protect travelers upon the same roadway as the vehicle in question who may be endangered by movements from a direct course.

Drivers not on the highway, but about to enter it, are not "traffic which may be affected" by the change in lanes. Since Loeser was following Carpenter, Carpenter may have violated the statute by failing to signal his change of lanes, but this violation was not negligence *per se* as to Donlea. He was not within the class of persons which this portion of the statute was designed to protect,[2] and the hazard protected against was of a different type.

The instruction was error. There is some doubt whether it had any substantial effect upon the result. We conclude, however, that it was prejudicial. It was given to the jury as a separate, additional instruction after conference between court and counsel, and its importance may thus have been

---

[2] See *Reque v. Milwaukee & S. T. Corp.* (1959), 7 Wis. (2d) 111, 114b, 95 N. W. (2d) 752, 97 N. W. (2d) 182, memorandum on rehearing.

emphasized to the jury. If Carpenter had been signaling for a change of lanes to his left, this might have avoided Donlea's mistaken belief that Carpenter was following Highway 35 to the south, and if the jury believed Carpenter should have been signaling, it could find that his failure to signal was causal. The apportionment of negligence is very close to the point where it would foreclose liability. We think the error requires reversal and a new trial under these circumstances.

One other instruction was erroneous, if understood by the jury as applying to Carpenter. This instruction set forth the requirements of sec. 346.31, Stats., requiring an approach for a left turn in the lane farthest to the left. The difference between a curve and a turn may be a matter of degree, and it would be unwise to attempt to state a comprehensive rule for all intersections similar to the one involved. But we think it clear that following Highway 14 through this intersection does not involve a left "turn." A driver coming from the south on Highway 35, however, does "turn" at the intersection, and since Donlea intended to turn to his left, such statutory requirements applied to him. It does not appear, however, that defendants claimed that Donlea failed to turn properly. The instruction should either have been omitted, or so worded as to make clear that the duty did not apply to traffic following Highway 14. It probably could not be prejudicial to Carpenter, however, because he appears to have moved over into the lane farthest to his left, and, in addition, defendants' counsel appears to have waived his objection at the trial. We mention it only because there has been considerable argument about it on appeal and the difficulty can be avoided upon retrial.

3. *Damages.* The jury awarded $9,800 as Donlea's pecuniary loss resulting from his wife's death. It found he suffered no pecuniary loss from his daughter's death. He moved that the court change the answers, increasing the amount as to his wife and inserting a figure as to his daughter. He did not ask for a new trial of these issues.

Mrs. Donlea was thirty-seven years of age, a college graduate, musician, and qualified to teach in the public schools. She gave up teaching before the birth of the first child, but had recently begun teaching part time. She had earned $400 in 1958, $1,961.21 in 1959, $932.32 in the four months before her death in 1960, and had a contract for the next school year. Her earnings were used to make payments on the home and would be used after that for college funds for children.

"It is admittedly difficult to determine from evidence of past actions the amount of pecuniary benefit a person would probably derive from another in the future." [3] Although the evidence would have supported a larger award, we cannot say as a matter of law that the evidence compelled a larger one.

Patricia Donlea was twelve years of age. She was the oldest of four children and helped with tasks about the house. The Donleas expected to send all their children to college when the time came. Counsel argues that if Patricia had lived she would have increased her assistance to the parents, particularly since she was the oldest child. This is probably true, but supporting her and sending her to college would involve expense. We cannot say as a matter of law that her death resulted in pecuniary loss.

Donlea has not moved for a new trial as to damages, and if no new trial were required on liability issues, we would not consider him entitled to a new trial as to any item of damages. Because of his complaint, however, and because the verdict as to pecuniary loss resulting from the death of Mrs. Donlea may be low, we will permit the new trial on liability issues to include that particular damage issue as well.

In this connection we note that for the purpose of establishing life expectancies, Donlea's counsel offered a certified

---

[3] *Martell v. Klingman* (1960), 11 Wis. (2d) 296, 317, 105 N. W. (2d) 446.

copy of life tables published by the United States Department of Health, Education, and Welfare as section 5 of Vital Statistics of the United States 1959. His offer was rejected by the court and the court in its instructions used the appropriate figures in the American Experience Table of Mortality set forth in the statutes following sec. 314.07. The rejected life tables show that a woman in the United States, aged between thirty-five and forty, had an average remaining lifetime at age thirty-five of 41.1 years. Thus, at Mrs. Donlea's age, thirty-seven at the time of the accident, her expectancy would be about 39 years. The life tables show that a man aged between thirty-five and forty had an average remaining lifetime at age thirty-five of 35.7 years. At Mr. Donlea's age, thirty-eight at the time of the accident, his expectancy would be about 32.7 years. The statutory tables used by the court do not differentiate between men and women, and for the same ages indicated an expectation for Mrs. Donlea of 30.35 years and for Mr. Donlea of 29.63 years. The statutory table is based upon the experience of the Mutual Life Insurance Company of New York during the years 1843 to 1860.[4] It is prescribed by the statutes as a basis for determining the values of life estates and annuities although frequently used in connection with the determination of damages in personal-injury cases.[5] Although the difference between the two expectancies for Mrs. Donlea is about eight years and for Mr. Donlea about three years, there may be some question as to whether the use of the statutory table would have a prejudicial effect. We see, however, no reason why a court should not take judicial notice of figures based on expectancies computed on the basis of current statistics and published by responsible government agencies and in-

[4] See Immel, Actuarial Tables and Damage Awards, 19 Ohio State Law Journal (1958), 240, 241.
[5] *Nolop v. Skemp* (1959), 7 Wis. (2d) 462, 96 N. W. (2d) 826.

clude such expectancies in instructions to the jury in a personal-injury action.

4. *Costs.* Each party has directed criticism at the adequacy of the brief and appendix of the other. We see no need to go into these matters in detail and feel that justice will be done by permitting defendants to tax costs ordinarily allowed to the prevailing party except that no permission is granted to tax costs for the printing of the pages of the principal brief in excess of 50.[6]

*By the Court.*—Judgment reversed, and cause remanded for a new trial on the issues of causal negligence and comparison thereof, and on the issue of damages for plaintiff's pecuniary loss resulting from his wife's death. Costs allowed as stated in the opinion.

---

[6] Appellant's brief was subject to the rule limiting costs for printing briefs to 50 pages in the absence of special permission. Effective September 1, 1963, the limitation has been changed to 40 pages. Sec. 251.38, Stats. (formerly sec. 251.264).