TILLS and wife, Respondents, v. ELMBROOK MEMORIAL HOSPITAL, INC., Appellant.

*No. 178. Argued October 6, 1970.—Decided November 6, 1970.*
(Also reported in 180 N. W. 2d 699.)

666

668

For the appellant there were briefs by *Gibbs, Roper & Fifield,* attorneys, and *Richard S. Gibbs* of counsel, all of Milwaukee, and oral argument by *Richard S. Gibbs.*

For the respondents there was a brief by *Robert J. Urban,* attorney, and *Grodin & Strnad* of counsel, all of Milwaukee, and oral argument by *Burton A. Strnad.*

HANLEY, J. The following issues are presented on appeal:

(1) Did the trial court err in permitting plaintiffs' counsel to cross-examine the medical witness by use of a pretrial deposition of that witness;

(2) Was the evidence bearing on standard of care admitted erroneously;

(3) Was expert testimony including the use of a general text on practical nursing admissible in evidence;

(4) Does the admission of mortality tables other than those in the Wisconsin statutes constitute reversible error; and

(5) Were the damages awarded excessive?

*Dr. Hotter's testimony, and the use of his adverse examination.*

The plaintiff, Mr. Tills, called as his own witness Dr. John T. Hotter, chief of urology at Elmbrook Memorial Hospital, Inc. Prior to trial Dr. Hotter had been a party defendant and his deposition had been taken on notice. Before trial, however, Dr. Hotter won a motion for summary judgment dismissing the complaint against him. Thus, at the time of trial he was not a party.

At trial Dr. Hotter was asked what was the custom and practice of the hospital in escorting patients who were retaining an enema. Hotter answered that there was no fixed policy in this regard. He indicated that

a decision to escort a patient to the bathroom or not would depend upon a number of variables, such as the age of the patient, his illness, the kind of enema, etc.

Over objection, the plaintiff was allowed to show that Dr. Hotter's answer to the same question had been different when his deposition was taken. When his deposition had been taken, Dr. Hotter had stated that it was "always" the practice to accompany an ambulatory patient who was retaining an enema. In other words, at deposition Hotter said it was a fixed rule to always escort patients retaining an enema. At trial he indicated that the rule was not fixed but varied depending upon the patient.

Defendant objected to the use of the deposition on the ground that it violated the rule against impeaching one's own witness.

It was not error to allow plaintiff to read limited portions from Dr. Hotter's adverse examination in order to show the jury that Hotter's testimony at trial differed from that given in his adverse examination. There is a well-recognized exception to the rule against impeaching one's own witness. Where a party is surprised by the adverse testimony of his own witness, he may show the jury that such witness has testified differently on a prior occasion and in that way explain to the jury what induced him to call the witness in the first place. 58 Am. Jur., *Witnesses*, pp. 444, 445, sec. 799. *See also:* 4 Jones, *Evidence*, Civil and Criminal (5th ed.), pp. 1772, 1773, sec. 942.

Moreover, even if this were error, defendant failed to preserve its objection on motions after verdict, and, therefore, it cannot, as a matter of right, raise them on appeal. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. 2d 380; *Schuster v. St. Vincent Hospital* (1969), 45 Wis. 2d 135, 145, 172 N. W. 2d 421; and *Jonas v. Northeastern Mut. Fire Ins. Co.* (1969), 44 Wis. 2d 347, 171 N. W. 2d 185. In addition, the testimony from Dr. Hotter's adverse went to whether

it was good hospital practice to permit a patient, retaining an enema, to walk to the bathroom unattended. Thus, even if it were error and even if it had been properly preserved for appeal, it could not be viewed as prejudicial error because this testimony was merely cumulative to that of three other qualified witnesses, to wit: Dr. Graziano, Mrs. Zillmer and Nurse Arns.

*Evidence on the proper standard of care.*

The defendant requested, and the court gave, Wis J I—Civil, Part I, 1385, with respect to the hospital's negligence. No reference is made in the instruction, nor did the defendant make any request, that there be added language to the effect that the standards are based upon care and skill used by hospitals and nurses in the same or similar communities.

We do not think that new counsel on appeal can now complain that defendant's trial counsel's requested instruction with respect to the hospital's duty was used. Any objection to the propriety of the instruction was waived. *Grinley v. Eau Galle* (1956), 274 Wis. 177, 79 N. W. 2d 797.

Appeal counsel contends that there was error in the trial of this case when the plaintiffs were allowed to introduce expert testimony on the issue of negligence.

We think that the admission of expert testimony was permissible under the circumstances. Jurors are not familiar with the weakening physiological effects of acute urinary retention and jurors are not familiar with the relative potency of enemas. The act of escorting is obviously one which the jurors could understand from their own common knowledge, but a decision as to whether or not such act was necessary, under the circumstances, is a question which would require the aid of expert testimony.

The defendant did not object to any expert testimony on the basis that expert testimony was improper.

Objection was made to the introduction of plaintiffs' evidence as it related to the standard of care. The defendant offered its own expert, Dr. William C. Curtis. Dr. Curtis responded to defendant's trial counsel's hypothetical question that he did not think John Tills had to be accompanied. No motion was made after verdict that the admission of expert testimony was improper.

Under the circumstances, the plaintiffs contend that the court should not consider the issue on the admission of expert testimony. We agree with plaintiffs' position. In *Wells v. Dairyland Mut. Ins. Co., supra,* at page 518, we pointed out that where there was a trial by jury:

". . . no error of the court should be reviewable *as a matter of right* on appeal without first moving in the trial court for a new trial bottomed on such error, if the error is of a category that a trial court could correct by granting a new trial. . . ."

We find no compelling circumstances in this case that would warrant this court to exercise its discretion to review the claimed error.

### *Admissibility of mortality tables.*

Defendant objects to the fact that the trial court allowed the plaintiffs to introduce a mortality table identified as Document No. 140, American Jurisprudence Desk Book, page 345. Defendant contends that the mortality tables in the Wisconsin Statutes are the only evidence which should be allowed on this point. It does not contend that the American Jurisprudence tables are inaccurate. Instead, it contends that they are not properly authenticated and that there was no proper foundation laid for the American Jurisprudence tables because plaintiffs did not state the source of them. Defendant is technically correct herein that no source for these tables was given other than the American Jurisprudence Desk Book itself.

However, the tables are identical to mortality tables currently published by the United States Department of Health, Education and Welfare; and in *Donlea v. Carpenter* (1963), 21 Wis. 2d 390, 400, 401, 124 N. W. 2d 305, this court said:

". . . We see, however, no reason why a court should not take judicial notice of figures based on expectancies computed on the basis of current statistics and *published by responsible government agencies* and include such expectancies in instructions to the jury in a personal-injury action." (Emphasis supplied.)

This court approved the use of American Jurisprudence annuity tables in *Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 168 N. W. 2d 112.

Defendant does not state what the source for the statutory tables is, but the court noted that source in *Donlea, supra,* at page 400:

". . . The statutory table is based upon the experience of the Mutual Life Insurance Company of New York during the years 1843 to 1860. . . ."

In any case such tables are merely guidelines for the jury, and the difference between the two tables is so slight that the error, if any, was harmless.

We also note that this is another point not preserved on motions after verdict.

*Excessiveness of damages.*

The damages awarded in this case to the plaintiff John Tills were as follows:

| | |
|---|---|
| Medical expense | $ 3,060 |
| Future wage loss | 20,000 |
| Personal injuries | 35,000 |
| Past wage loss | 54,000. |

In addition, Mrs. Tills was awarded $5,000 for nursing services and $1,000 for loss of society and companionship.

This court will review the issue of damages *ab initio* since the trial court merely denied the motions to reduce the award but did not file a detailed memorandum thereon. *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 152 N. W. 2d 911.

Taking first the award for Mrs. Tills' nursing services in the sum of $5,000, defendant objected to this both at trial and after trial, on the grounds that the plaintiffs failed to plead that item in their complaint.

There is no specific reference in the complaint to the item of nursing services, but the trial court allowed this evidence anyway. Defendant contends that the evidence was inadequate to support *any* award in this regard. The only evidence in the record supporting this claim is a series of personal checks totaling about $600 from Mrs. Tills to various nurses during the month of October. There was no testimony that such services were necessary, other than that of Mrs. Tills. The same is true of the services rendered by Mrs. Tills after she quit her job and started caring for Mr. Tills in November of 1966. The record does indicate that Mr. Tills had been up and around since early February.

There was no testimony showing that the $600 in October for professional nursing services was reasonable. But, even presuming that it was and presuming that Mrs. Tills' services from November, 1966, through January, 1967, were worth the same, this would only entitle her to three times $600, or $1,800. Nursing service is a future medical expense, and such an expense cannot be the subject of speculation. In *Sawdey v. Schwenk* (1958), 2 Wis. 2d 532, 87 N. W. 2d 500, this court noted that an award for future medical expense cannot be upheld if not supported by expert medical testimony.

Therefore, as for the award to Mrs. Tills for nursing service, it appears that $1,800 would be a reasonable

amount to be awarded under the evidence. This $1,800 for nursing services, plus $1,000 for loss of society and companionship (minus 20 percent contributory negligence) equals $2,240. The judgment is so modified.

Turning now to the awards to Mr. Tills, we find defendant arguing strenuously that the elements of this award were excessive. Unlike the previous issues in this case, defendant *did* preserve the damage objection by motions after verdict.

Counsel for Mr. Tills contends that there is no showing that the jury's verdict was the result of passion, prejudice or corruption, and, therefore, this court has no power to disturb the jury's verdict. This is not correct.

Where a verdict is excessive but not the result of passion, prejudice or corruption, then the *Powers* rule comes into play. In *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 91, 92, 102 N. W. 2d 393, this court explained that:

"... where an excessive verdict is not due to perversity or prejudice, and is not the result of error occurring during the course of trial, the plaintiff should be granted the option of remitting the excess over and above such sum as the court shall determine is the reasonable amount of plaintiff's damages, or of having a new trial on the issue of damages. . . ."

This rule has been followed in a long line of cases including *Bash v. Employers Mut. Liability Ins. Co.* (1968), 38 Wis. 2d 440, 157 N. W. 2d 634; *Lisowski v. Chenenoff* (1968), 37 Wis. 2d 610, 155 N. W. 2d 619; and *Moldenhauer v. Faschingbauer* (1966), 30 Wis. 2d 622, 141 N. W. 2d 875.

Now, as to whether or not the award in this case was excessive, it should be noted that some evidence as to each item is present, but the rule is that "proof thereof must be to a reasonable certainty." *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 133 N. W. 2d 235; *Burlison v. Janssen* (1966), 30 Wis. 2d 495, 503, 141 N. W. 2d 274.

In making a determination as to lost wages in the case, the jury was faced with a complicated series of variable factors. Mr. Tills was employed by two separate concerns—Barrett Varnish Company and Reichold Chemical Company. Tabulation of his total income for any given year involved such factors as straight salary, commissions, percentage bonus on sales above a fixed amount, and payment of lump sums for expenses which varied somewhat from actual expenses.

In addition to this the element of "disability" was present in both the wage loss and personal injury aspects of the award. The trial court did not give Wis J I—Civil, Part II, 1700 (d), which cautions the jury against duplication as regards the element of disability. In view of all this, it is very apparent that the possibility of honest error, as to the damage award, was quite high in this case.

The result was an award of well over $100,000 (before subtracting contributory negligence) to a man aged seventy-four, who was suffering from various unrelated illnesses both before and after the accident here involved.

The accident occurred in September of 1966. The record discloses that by early 1967 (*i.e.,* less than four to five months after the accident) Mr. Tills was already back to work on a limited basis making sales calls by telephone from his home. By June of 1967, he was driving his car on the road again; and by the end of 1967, he made 18 to 20 out-of-town calls by car.

It is true that his annual income between the time of the accident and the time of trial fell off markedly. But his capacity to earn was not impaired for a sufficient period of time to justify the amount of the award in this case.

We think upon a careful review of all the pertinent evidence bearing upon past and future wage loss that $35,000 is a reasonable sum to award to plaintiff, John Tills, for past wage loss and $15,000 for future wage loss.

We also consider the jury award for personal injuries in the sum of $35,000 to be excessive. We determine from the review of pertinent evidence relative to the personal injuries that $25,000 is a reasonable sum to award to the plaintiff.

We conclude that the case should be remanded to the trial court with instructions to enter a formal order for a new trial on the issue of damages only, unless within twenty days after the return of the record to the trial court the plaintiff, John Tills, files a consent with the clerk of court to remit $27,200 of his judgment. If the appropriate notice of his election to remit such amount is given by plaintiff, John Tills, then, in lieu of the order for a new trial, the circuit court should enter a judgment for the proper reduced amount.

The judgment in favor of plaintiff, Catherine Tills, is modified in accordance with the opinion, and, as modified, affirmed.

*By the Court.*—Judgment in favor of John Tills is reversed, and cause remanded with directions. Judgment in favor of Catherine Tills is modified and, as modified, affirmed.