Cathy FLEURY, by Rex Capwell, her Guardian ad Litem, and another, Plaintiffs-Appellants, v. WENTORF, and others, Defendants-Respondents and Third-Party Plaintiffs: Michael FLEURY, Third-Party Defendant.

*No. 75–477. Submitted on briefs December 1, 1977.—
Decided February 7, 1978.*
(Also reported in 262 N.W.2d 68.)

For the appellants the cause was submitted on the brief of *Foley & Capwell, S. C.* of Racine.

For the respondents the cause was submitted on the brief of *Geoffrey Van Remmen* and *Schoone, McManus & Hanson, S. C.* of Racine.

BEILFUSS, C. J. The principal issue is whether the homemade toy cannon made by one of the defendants

is within the prohibition of the anti-fireworks statute.[1] Other issues are raised and will be referred to in the opinion.

The defendant Eric Wentorf, then age seventeen, made a homemade toy cannon by removing the ends of five or six beer or soda cans and taping them together to form a hollow tube. The bottom end of the bottom can was left intact and a small hole was punched in the side of that can. Lighter fluid was put in the bottom can, a tennis ball inserted in the tube, the contraption was shaken, and then a match was ignited and held at the small opening on the side of the bottom can. This resulted in a noisy explosion and propelled the tennis ball to distances of about 100 yards.

Eric Wentorf and his brother had shot the cannon for at least two or three days prior to October 9, 1971, the day of the incident in question. His parents, Fred Wentorf and Geralyn Wentorf, who are also defendants in this action, knew that Eric had made the cannon, knew how it operated and knew Eric was shooting it from the driveway of their home in Racine.

The plaintiff Thomas J. Fleury and his family lived across the street. On the day in question Thomas Fleury heard the discharge of the cannon and sent his seventeen-year-old son Michael across the street to warn the younger children to stay away from the scene. Michael's thirteen-year-old sister, the plaintiff Cathy Fleury, followed him to the Wentorf driveway. Michael stated he was not really aware of her presence.

Michael told the younger children to leave and play in a nearby playground. After the younger children left Eric fired the cannon a couple of times. Michael then asked Eric if he could fire the cannon. Eric consented and explained how it worked. The cannon was loaded with the lighter fluid and tennis ball and Michael

---

[1] Sec. 167.10, Stats.

struck a match and held it near the small hole at the bottom. The cannon did not fire. Unknown to Michael, Cathy then looked down the tube while he was lighting it a second time. The cannon fired and the tennis ball hit Cathy's right eye.

Michael testified he did not know Cathy was looking down the tube and Cathy testified she did not know Michael was attempting to ignite the cannon a second time. The injury to Cathy resulted in loss of the sight of one eye.

This action was commenced in July of 1972. The complainants are the plaintiffs Cathy A. Fleury by her guardian *ad litem,* and her father Thomas J. Fleury. Cathy claims damages because of her injury and her father claims the medical expenses. The defendants are Eric Wentorf and his parents Fred and Geralyn Wentorf. The Wentorfs served a third-party complaint against Michael Fleury and he is a third-party defendant.

The case was tried to a jury. The verdict returned attributed 60 percent of the causal negligence to Michael Fleury and 40 percent to Cathy. None of the Wentorfs were found negligent.

The plaintiffs-appellants, Cathy and Thomas Fleury, contend that Eric Wentorf and his parents should be found negligent as a matter of law because of a violation of the fireworks statute, a safety statute, and that Fred and Geralyn Wentorf, the parents of the minor Eric, should be held absolutely liable pursuant to sec. 167.10 (7), Stats.

The two sections of the fireworks statute referred to are as follows:

"167.10 *Fireworks regulated.* (1) It is unlawful for any person to sell, expose or offer for sale, use, keep, discharge or explode any firecrackers, blank cartridges, toy pistols or cannons, toy canes or cannons in which explosives are used, contrivances using explosive caps or cartridges, sparklers, display wheels, the type of balloon which requires fire underneath to propel the

same, torpedoes, sky rockets, Roman candles, aerial salutes, American or Chinese bombs or other fireworks of like construction, or any fireworks containing any explosive or flammable compound, or any tablets or other devices commonly used and sold as fireworks containing nitrates, chlorates, oxalates, sulphides of lead, barium, antimony, arsenic, mercury, nitroglycerine, phosphorus or any compound containing any of the same or other modern explosives, within the state of Wisconsin, except as hereinafter provided.

"...

"(7) A parent or legally appointed guardian of any minor who shall knowingly permit such minor to purchase or have in his possession or to discharge any fireworks forbidden by this section shall be deemed to have violated this section and such parent or guardian shall be personally liable for any damage caused by such possession or discharge of fireworks."

In the instructions to the jury the trial court defined ordinary or common law negligence and further instructed the jury that a violation of a safety statute is negligence. The trial judge then read the two fireworks statutes quoted above. He further instructed the jury that a parent must exercise ordinary care to prevent his or her child from intentionally harming others or from conducting himself so as to create an unreasonable risk of bodily harm to others.

In its decision on motions after verdict, wherein the court was asked to change the negligence answers as to the Wentorfs from "no" to "yes," it concluded the homemade cannon did not clearly come within the fireworks statute and denied the motion to change the answers.

The trial court relied upon our opinion in *Burke v. Milwaukee & Suburban Transport Corp.*, 39 Wis.2d 682, 159 N.W.2d 700 (1968). In this opinion we stated that a violation of safety statute is negligence *per se*. However, it must appear that the statute was designed to

prevent the kind of harm inflicted and that the person or property injured was within the class sought to be protected.[2]

The kind of harm which sec. 167.10, Stats., is designed to prevent is injury by fireworks. The class of people protected by this statute is less certain, but certainly children are more likely to be injured by fireworks and are within the class.[3]

*Burke v. Milwaukee & Suburban Transport Corp., supra* at 690, held that because violation of a safety statute constitutes negligence *per se,* the application of the statute to the facts at hand must be clear:

" '. . . statutes are not to be extended so as to impose any duty beyond that imposed by the common law unless such statute clearly and beyond any reasonable doubt expresses such purpose by language that is clear, unambiguous and peremptory.'

"Guided by this principle, this court has narrowly construed the legislative intent of various statutes and ordinances and has limited the persons protected and the hazards protected against to the intendment of the statute."[4]

Unless the homemade toy cannon clearly falls within the fireworks statute it cannot be held to be negligence as a matter of law. In our opinion the language of sec. 167.10(1), Stats., is not clear, unambiguous and peremptory in its terms. It follows it was not error for the trial court to deny appellants' motion.

---

[2] *Weiss v. Holman,* 58 Wis.2d 608, 616–17, 207 N.W.2d 660 (1973), and *Yanta v. Montgomery Ward & Co.,* 66 Wis.2d 53, 62, 224 N.W.2d 389 (1974).

[3] *Commonwealth v. Bristow,* 185 Pa. Super 448, 138 A.2d 156, 160 (1958).

[4] *See also, Clark v. Corby,* 75 Wis.2d 292, 299 (footnote 9), 249 N.W.2d 567 (1977); *Weiss v. Holman,* 58 Wis.2d 608, 617, 207 N.W.2d 660 (1973).

The major question is whether a homemade toy cannon, using lighter fluid as its source of power, falls within the category of a toy cannon "in which explosives are used." The pleadings make no reference to the statute nor were the ingredients of the lighter fluid involved described at the trial. It was only after all the evidence was presented that the statute was referred to. The respondents correctly contend that the absence of a proper description of the fluid could be grounds for refusing to consider the applicability of sec. 167.10, Stats., on appeal. The fact that the type of propellant used is not known goes to the heart of whether, beyond a reasonable doubt, the fireworks statute was violated and *per se* negligence should apply.

While the respondents rely upon the lack of evidence, they also deal with the statutory issue. They concede that naphtha is the major ingredient in most commonly advertised lighter fluids. In *Johnson v. Chemical Supply Co.*, 38 Wis.2d 194, 201, 156 N.W.2d 455 (1968), this court, citing Webster's Dictionary (1966 ed., Unabridged), defined "naphtha" as:

" '[P]etroleum, especially when occurring in any of its more volatile varieties . . . any of various volatile often flammable liquid hydrocarbon mixtures used chiefly as solvents and diluents and as raw materials for conversion to gasoline.' "

The list of explosives included in sec. 167.10(1), Stats., does not include petroleum products. The doctrine of *ejusdem generis* and *expressio unius est exclusio alterius* suggest that this listing of non-petroleum based explosives excludes lighter fluid from consideration as an explosive in this statute. However, the legislature has indicated that this is not a complete list by adding the phrase "or other modern explosives."

Cases from other jurisdictions are not uniform as to whether petroleum products are considered explosives.

These decisions were made under many different types of statutes. The cases do not hold that petroleum products like gasoline, kerosene or naphtha are not capable of exploding. The question is whether they are to be considered explosives within the meaning of the statute.

Cases holding that petroleum products are explosives include: *Magnolia Petroleum Co. v. Angelly,* 306 P.2d 309, 316 (Okla. 1956); *Huckleberry v. Missouri Pacific R. Co.,* 324 Mo. 1025, 26 S.W.2d 980, 986 (1930); and *Smith v. Marine Oil Co., Ltd.,* 10 La. App. 674, 121 So. 782, 783 (1929).

The cases holding that petroleum products are not explosives have various rationales in the face of the recognized explosive quality of such products. *Purcell v. Davis,* 100 Mont. 480, 50 P.2d 255, 259 (1935); and *Morse v. Buffalo Tank Corp.,* 280 N.Y. 110, 19 N.E.2d 981 (1939), held that gasoline was in such common use that to characterize it as an explosive would be unreasonable given the fact that explosives are classified as inherently dangerous substances; this would place an onerous burden on the everyday user. In *People v. Sullivan,* 39 A.D.2d 631, 331 N.Y.S.2d 298, 299 (1972), the court dealt with a statute which specifically exempted products such as gasoline, kerosene, naphtha, turpentine, etc., from the definition of explosives. The court held that a molotov cocktail filled with kerosene was not an explosive in spite of evidence that it would produce an explosion when thrown.

We conclude it was appropriate for the trial court to refuse appellants' motion on the basis that the homemade cannon described herein was not clearly shown to be a toy cannon which uses explosives and was prohibited by the fireworks statute.

The statute also makes reference to "any fireworks containing any explosive or flammable compound." Naphtha is clearly flammable. Because sec. 167.10, Stats., deals with fireworks generally, this toy cannon might

be considered a firework containing a flammable compound.

This could be controlling if we were dealing with a non-safety statute, but here, where we are dealing with a request for a *per se* negligence finding based upon a safety statute we cannot conclude the proof was sufficient to show beyond a reasonable doubt that the statute clearly and unambiguously covered this homemade toy cannon.

The appellants assert that it was reversible error for the trial court to preface the pattern instruction on children's negligence, Wis J I—Civil, Part I, 1010, with a paragraph informing the jury that it applied only to Eric Wentorf and Cathy and Michael Fleury, while refusing to provide a preface to Wis J I—Civil, Part I, 1005, indicating that it only applied to Fred and Geralyn Wentorf.

The trial court stated that it refused to preface 1005 because it was possible that that instruction on negligence could have applied to Eric or Michael, both of whom were seventeen years old. The court commented that if it had given the requested preface the jury might have felt foreclosed from treating either Eric or Michael as adults, even if their age, experiences, background and training showed that they might be considered adults, not children.

Even if this reasoning was incorrect, appellants show no demonstrable harm from the refusal other than a generalized complaint that the jury might have incorrectly applied the adult standard to Cathy Fleury. This allegation is not enough to show prejudicial error. The test in passing on the prejudicial affect of an erroneous instruction is the probability, not the possibility, that the jury was misled thereby.[5]

---

[5] *Nashban Barrel & Container Co. v. Parsons Trucking Co., 49* Wis.2d 591, 606, 182 N.W.2d 448 (1971); *Menge v. State Farm*

It does not appear probable that the jury was confused by the instructions. That the jury could have applied the general instruction on negligence to Cathy Fleury is possible, but not probable because of the trial court's clear instruction that Wis J I—Civil, Part I, 1010, could apply only to persons under eighteen and therefore only to Eric, Michael and Cathy.

The final error claimed by appellants is that the court incorrectly refused to submit an instruction on attractive nuisance to the jury.

The five elements required for a cause of action in attractive nuisance have been set forth by this court several times.[6] The fourth element requires:

". . . that the injured child, because of his youth or tender age, did not discover the condition or realize the risk involved in going within the area, or in playing in close proximity to the inherently dangerous condition."

At trial Cathy Fleury testified that she was fully aware of the danger of looking into the cannon; that the tennis ball would be launched at a great speed; and that anyone who might be in the way could be injured. Thus it is apparent that the fourth element of attractive nuisance has not been established. Cathy realized the possible danger but negligently exposed herself to it.

*By the Court.*—Judgment affirmed.

CALLOW, J., took no part.

---

*Mut. Automobile Ins. Co.*, 41 Wis.2d 578, 584, 164 N.W.2d 495 (1969).

[6] *Schilz v. Walter Kassuba, Inc.*, 27 Wis.2d 390, 393, 134 N.W.2d 453 (1965); *Kastenson v. Kastenson*, 54 Wis.2d 401, 403–04, 195 N.W.2d 454 (1972); *Kempen v. Green Bay & Mississippi Canal Co.*, 66 Wis.2d 185, 187–88, 224 N.W.2d 202 (1974).