Miguel GONZALEZ, Sr., Esperanza Gonzalez and Miguel Gonzalez, Jr., by his Guardian as Litem, Robert H. Bichler, Plaintiffs-Respondents and Cross-Appellants,†

v.

The CITY OF FRANKLIN, a municipal corporation, and the Home Indemnity Company, and insurance corporation, Defendants-Appellants and Cross-Respondents.

Court of Appeals

*No. 84–1733. Oral argument September 12, 1985.—Decided January 22, 1986.*
(Also reported in 383 N.W.2d 907.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendants-appellants and cross-respondents, briefs were filed by *Rocke A. Calvelli* and *Douglas H. Starck* of *Prosser, Wiedabach & Quale, S.C.* of Milwaukee. Oral argument by *Rocke A. Calvelli* and *Douglas H. Starck*.

For the plaintiffs-respondents and cross-appellants, briefs were filed by *Robert H. Bichler* of *Thompson & Coates, Ltd.* of Racine. Oral argument by *Robert H. Bichler*.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. The City of Franklin and The Home Indemnity Company (collectively, Franklin) appeal from a judgment following a jury verdict in favor of Miguel Gonzalez, Sr. (Gonzalez), Esperanza Gonzalez, and Miguel Gonzalez, Jr. (the boy) for injuries suffered by Gonzalez and the boy when a firework found in a Franklin park exploded. Franklin raises a plethora of issues on appeal. The only reversible error involves the trial court's determination that the city's insurance policy with Home waived the statutory governmental $50,000 limit on recovery of sec. 893.80, Stats. Beyond this, however, we affirm the trial court's judgment in all respects. We also reject the Gonzalezes' cross-appeal asking us to reconsider our holding in *White v. General Casualty Co. of Wisconsin,* 118 Wis. 2d 433, 348 N.W.2d 614 (Ct. App. 1984).

On August 1, 1982, Gonzalez, his wife Esperanza, daughter Norma, and son Miguel, Jr. went to a family picnic in Lions Legend Park in Franklin. While at the park, the seven-year-old boy found an explosive evidently left over from the city's Fourth of July celebration. The boy took the black plastic ball home with him, unbeknownst to his parents. There, he managed to light the fuse of the ball, which he evidently believed to be a smoke bomb. Gonzalez then noticed what the boy had done, shouted to the children to get back and reached for the ball to throw it away. It exploded, seriously injuring both father and son.

The Fourth of July fireworks show was put on by Galaxy Fireworks Manufacturing Company (Galaxy). Among the fireworks Galaxy used was a box purchased from Pyro Science Development Corporation (Pyro). Following the show that evening, a Galaxy crew cleaned up the launching area, looking for unexploded

shells. None was found. Galaxy, however, had made no representation to Franklin, contractual or otherwise, concerning cleanup. City representatives acknowledged that the city was in charge of security and cleanup. Moreover, there were other fireworks shot off at the park that night; no conclusive showing was made at trial that the offending explosive originated with Galaxy or Pyro.

At trial, the judge forbade any reference to Gonzalez's status as an illegal alien. While recognizing its potential relevance, he deemed its prejudicial effect to outweigh it.

The jury found the City of Franklin 100% negligent and assessed damages for the Gonzalezes at $694,973.82. This was reduced on motions after verdict to $500,000, the limits of the insurance policy issued to Franklin by Home. The trial court denied Franklin and Home's motion to reduce the amount of the award to comport to the $50,000 per person governmental limit of sec. 893.80, Stats., holding that there was a waiver of that limitation by language in an amendment to the policy. Franklin and Home (hereinafter, Franklin) appeal.

The Gonzalezes cross-appeal, claiming that their joint offer to settle with Home for $499,999.99 entitles them to preverdict interest and double costs. Further facts will be set forth as necessary.

Franklin first contends that the $50,000 limit of sec. 893.80, Stats., was not waived by the language of an amendment to the policy. We agree and accordingly reverse that part of the judgment setting damages and remand for the entry of a damages award in accord with the $50,000 limit set forth in sec. 893.80(3).

The policy amendment language relied upon by the trial court for its conclusion of waiver reads as follows:

Any person or organization or the legal representative thereof who has secured a judgment against the insured shall be entitled to recover under this policy to the extent of the insurance afforded by this policy.

The trial court held that the "absolute absence of any limitation" upon liability in the above language satisfied the requirements of waiver of limits on municipal recovery. We disagree. The construction of an insurance policy is a question of law. *Katze v. Randolph & Scott Mutual Fire Insurance Co.,* 116 Wis. 2d 206, 212, 341 N.W.2d 689, 691 (1984). We owe no deference to the trial court's resolution of issues of law. *Behnke v. Behnke,* 103 Wis. 2d 449, 452, 309 N.W.2d 21, 22 (Ct. App. 1981).

Prior Wisconsin waiver cases indicate that, for waiver to lie, there must be more than a merely inferential statement of waiver. The amendment language here is insufficiently explicit to serve as a waiver.

In those two Wisconsin cases argued to us in which waiver was found, the expression of waiver was explicit and direct. In *Stanhope v. Brown County,* 90 Wis. 2d 823, 847, 280 N.W.2d 711, 721 (1979), the pertinent language read: "It is agreed that to the extent legally possible, the Company will not avail itself of the defense that the Insured is not liable because of the performance of Governmental Functions." Our supreme court held that this waived the statutory defense of limitation of recovery under secs. 81.15 and 895.43, Stats. (1971). *Id.* at 852, 280 N.W.2d at 723. In *Marshall v.*

*City of Green Bay,* 18 Wis. 2d 496, 501, 118 N.W.2d 715, 718 (1963), our supreme court stated that "[t]he policy also provided the insurer would not raise the defense of governmental immunity." Further, "[t]he policy by its terms required . . . that the company will not avail itself of the defense that the city is not liable because of the performance of governmental functions." *Id.* at 497, 118 N.W.2d at 716. The court construed the policy to set forth "a waiver of governmental immunity by the city recognized and agreed to by the insurer." *Id.* at 501, 118 N.W.2d at 718.

Conversely, the language in the amendment before us makes no reference to government or municipal immunity or limitations in any form, nor does it refer, obliquely or otherwise, to the insured's forgoing of any such immunity or limitation. Any relationship between the amendment and governmental immunity or limitation upon recovery is, at very best, inferential only. Such is not true of the policy language of *Stanhope* or the language inferred in *Marshall.*

We take further guidance from *Sambs v. City of Brookfield,* 66 Wis. 2d 296, 224 N.W.2d 582 (1975). Beyond characterizing the policy in *Marshall* as "specifically provid[ing] that the insurer would not raise the defense of governmental immunity," the supreme court concluded that there was no waiver because "there is no clause in the insurance policy *prohibiting either use of the immunity defense or reliance on the statutory liability limitation." Sambs* at 315, 224 N.W.2d at 592. (Emphasis added.)

The *Sambs* court was further unpersuaded by cases from other jurisdictions that "the defense of immunity can be waived without there being *a specific clause* in the insurance policy prohibiting the assertion

of the defense." *Id.* at 316, 224 N.W.2d at 593. (Emphasis added.) The court in *Stanhope,* 90 Wis. 2d at 851–52, 280 N.W.2d at 723, also required a "specific waiver endorsement" and stated that the statutory limitation on recovery serves no legitimate public purpose when a governmental body carries liability insurance in excess of the statutory limitation and *"expressly* waives its defense. . . ." (Emphasis added.) We glean from these cases the requirement that the waiver must be specific or express. The language argued as constituting a waiver here is neither. It makes no reference to governmental functions or to the concept of waiver. As a result, we are unpersuaded that this language is reasonably or fairly susceptible to more than one construction. *Id.* at 848–49, 280 N.W.2d at 722. The amendment language does not constitute a waiver of governmental liability limits.

Next, Franklin challenges the sufficiency of the evidence with respect to the jury's negligence apportionments. We affirm those apportionments.

We begin this discussion by noting that we will sustain a jury's apportionment of negligence where there is any credible evidence that under any reasonable view supports the verdict and removes the question from the realm of conjecture. *Johnson v. Misericordia Community Hospital,* 97 Wis. 2d 521, 566, 294 N.W.2d 501, 523 (Ct. App. 1980), *aff'd,* 99 Wis. 2d 708, 301 N.W.2d 156 (1981). The jury's assessment of 100% negligence to the City of Franklin is supported by evidence that the city was in charge of cleaning up after the fireworks show, that Galaxy was not obligated under its contract to clean up and that Franklin did not rake the firing range area. The jury's findings of no negligence

on the part of Galaxy and Pyro are supported by evidence that fireworks were shot off by parties other than Galaxy in the park on July 4. Consequently, there was no incontrovertible proof that the offending bomb was produced by Pyro or used by Galaxy.

The jury's finding of no negligence on the part of the boy may be ascribable to the boy's extreme youth; a child of tender years is not held to the same degree of care as an adult. *Rossow v. Lathrop,* 20 Wis. 2d 658, 663, 123 N.W.2d 523, 526 (1963). Evidently, the jury believed that a seven-year-old attempting to light what he believed was a smoke bomb was not negligent. We see no reason to alter that judgment. Nor, given the circumstances in which Gonzalez discovered the boy with the lit firework, are we convinced that the jury's finding of no negligence on the part of Gonzalez is error. The obviously short time in which Gonzalez had to make a decision which, unfortunately, had such dire consequences evidently persuaded the jury that his efforts to throw the ball away were not unreasonable under the circumstances.

We are further unpersuaded that the fireworks safety statute, sec. 167.10, Stats. (1981–82),[1] should have been applied against the boy. We affirm the correctness of the trial court's refusal to give a jury instruction regarding it, therefore.

The pertinent portion of sec. 167.10(1), Stats. (1981–82), reads as follows:

---

[1] Section 167.10, Stats. (1981–82), was repealed and recreated by 1983 Wis. Acts 446 § 1m and 538 § 166, both effective September 1, 1984.

It is unlawful for any person to sell, expose or offer for sale, use, keep, discharge or explode any firecrackers, blank cartridges, toy pistols or cannons, toy canes or cannons in which explosives are used, contrivances using explosive caps or cartridges, sparklers, display wheels, the type of balloon which requires fire underneath to propel the same, torpedoes, sky rockets, Roman candles, aerial salutes, American or Chinese bombs or other fireworks of like construction, or any fireworks containing any explosive or flammable compound, or any tablets or other devices commonly used and sold as fireworks containing nitrates, chlorates, oxalates, sulfides of lead, barium, antimony, arsenic, mercury, nitroglycerine, phosphorus or any compound containing any of the same or other modern explosives, within the state of Wisconsin, except as hereinafter provided.

Franklin argues that the boy violated this safety statute and that his violation constituted negligence *per se.* The trial court refused to "find a seven year old lad guilty [of negligence] as a matter of law."

To arrive at a *per se* negligence finding based upon a safety statute such as this, there must be proof sufficient beyond a reasonable doubt, expressed in language that is clear, unambiguous and peremptory, that the statute clearly and unambiguously applies. *See Betchkal v. Willis,* 127 Wis. 2d 177, —, 378 N.W.2d 684, 687 (1985). The courts of this state have narrowly construed the legislative intent of such statutes and have limited the persons protected and the hazards protected against to the intendment of the statute. *Burke v. Milwaukee & Suburban Transport Corp.,* 39 Wis. 2d 682, 690, 159 N.W.2d 700, 704 (1968).

Section 167.10, Stats., is designed to prevent injury by fireworks. *Fleury v. Wentorf,* 82 Wis. 2d 105, 110, 262 N.W.2d 68, 70 (1978). It pursues its purpose by strictly regulating the sale and use of fireworks. *Cornellier Fireworks Co. v. St. Croix County,* 119 Wis. 2d 44, 46, 349 N.W.2d 721, 722 (Ct. App. 1984). Children are certainly within the class to be protected. *See Fleury,* 82 Wis. 2d at 110, 262 N.W.2d at 70–71. While there can be little question that the boy comes within the ambit of the statute's protection, there is far less certainty that the circumstances of this case constitute a hazard intended by the legislature to have been protected against. We are persuaded, as evidently the trial court was, that the statute, narrowly construed, excludes from its intended ambit the hazard of detonation by a seven-year-old boy of a firework which he believes to be a smoke bomb and which he discovered only through the negligence of the party claiming the protection or benefit of the statute. We cannot say that the statute applies beyond a reasonable doubt here.

Our final consideration on this issue is Franklin's argument for a new trial in the interests of justice. We may order a new trial if "it is probable that justice has for any reason miscarried. . . ." Section 752.35, Stats.[2]

[2] Franklin also urges, on the strength of *Mossey v. Mueller,* 63 Wis. 2d 715, 719–20, 218 N.W.2d 514, 516 (1974), and *Bartell v. Luedtke,* 52 Wis. 2d 372, 377, 190 N.W.2d 145, 148 (1971), that we may also grant a new trial in the interests of justice when the verdict is against the great weight of the evidence, even though there is sufficient credible evidence to support the jury's finding. As those cases, and their predecessors (*McPhillips v. Blomgren,* 30 Wis. 2d 134, 139, 140 N.W.2d 267, 270 (1966); *Flippin v. Turlock,* 24 Wis.

These sufficiency of the evidence arguments, whether taken individually or collectively, do not persuade us that justice has miscarried.

The next issue Franklin raises concerns the trial court's prohibition of evidence that Gonzalez was an illegal alien. Franklin contends that this determination denied it a fair trial. We disagree.

Evidence, even if relevant, may be excluded if its probative value is substantially outweighed by, among other considerations, the danger of unfair prejudice. Section 904.03, Stats. The exclusion is within the trial court's discretion after balancing the probative value and possible prejudice. The test on appeal is whether appropriate discretion was in fact exercised by the trial court. *Independent Milk Producers Co-op v. Stoffel,* 102 Wis. 2d 1, 12, 298 N.W.2d 102, 107 (Ct. App. 1980). Here, the trial court did exercise its discretion. The trial court stated that there was "some relevance" to Gonzalez's immigrant status "or that he possibly might be deported" but viewed the latter as "speculative and conjectural."[3] The court concluded, however, that "his status as an alien is not to be brought to the jury's attention. . . . I think that is only fair."

Evidence is unfairly prejudicial if it tends to influence the outcome by improper means or provokes one's

---

2d 49, 54–55, 127 N.W.2d 822, 825 (1964); *Brunke v. Popp,* 21 Wis. 2d 458, 462, 124 N.W.2d 642, 644 (1963)) show, such is the standard of review for the *trial,* not the appellate, court's granting of a new trial.

[3] We note that there was no offer of proof made by any defendant that deportation was anything other than a speculative or conjectural possibility.

instincts to punish. *Lease America Corp. v. Insurance Co. of North America,* 88 Wis. 2d 395, 401, 276 N.W.2d 767, 770 (1979). The potential for prejudice in the jury's learning of the illegal alien status of a party is both obvious and substantial.[4] We affirm, therefore, the trial court's exercise of discretion.

Franklin also challenges the trial court's ruling that an economist could not be questioned concerning Gonzalez's income tax returns because Gonzalez's failure to file tax returns might have unduly prejudiced the jury. Franklin argues that the ruling precluded it "from effectively cross-examining plaintiffs' expert economist and showing that he had insufficient information upon which to base his conclusions regarding past and future earnings loss." We cannot agree.

At a side bar conference during the economist's testimony, the trial court authorized the question: "It is true, is it not, that you were not provided with all of the traditional documentation relating to earnings prior to the injury?" The court further authorized questions concerning what information the economist was provided with. By means of the first question, counsel was allowed to have doubt cast upon the economist's conclusions. By means of the further questions, counsel could and did elicit the data upon which the conclusions were drawn. Consequently, counsel *was* allowed by the trial court to create an inference for the jury

---

[4] We note that the Michigan Appeals Court case cited to us by Franklin, *Melendres v. Soales,* 306 N.W.2d 399, 402 (Mich. Ct. App. 1981), while holding that illegal alien status was relevant to damages, nevertheless required a bifurcated new trial, at which the status would be kept from the jury during the liability phase. In the case before us, bifurcation was not sought.

that the economist had insufficient information. We are unpersuaded that being allowed to mention income taxes would have added anything significant to the attempted impeachment, especially when weighed against the obvious unfair prejudice which would have attended the revelation of Gonzalez's failure to file income taxes.

Franklin next argues error in the admission into evidence of mortality tables for white males. For three reasons, we are unpersuaded that the admission of this table was error.

Here, for purposes of determining how many replacement prostheses Gonzalez might need in the future, Gonzalez's counsel used at trial a mortality table which breaks down the populace by race (white and black) and sex (male and female). The figure for white males went to the jury. The jury was not informed, however, that the figure explicitly referred to white males. Franklin objected to the admission of this evidence because it contended that the table of life expectancy for an illegal alien should have been used and that use of a white male figure was error in that "[a] substantial portion of the jury's verdict in this case relates to future damages and thus it is apparent that the mortality tables were relevant to the jury's deliberation."

First, the use of mortality tables to determine life expectancy is speculative. *Cords v. Anderson,* 80 Wis. 2d 525, 551, 259 N.W.2d 672, 684 (1977). In order to show the impairment of future earning capacity, a plaintiff must be permitted to introduce evidence that is more speculative and uncertain than would be acceptable for proof of historical facts. *McCrossen v.*

*Nekoosa Edwards Paper Co.,* 59 Wis. 2d 245, 262, 208 N.W.2d 148, 158 (1973). Our supreme court has acknowledged the admissibility of varying tables with divergent figures. *See Tills v. Elmbrook Memorial Hospital, Inc.,* 48 Wis. 2d 665, 675, 180 N.W.2d 699, 705 (1970).

The speculative nature of trying to predict the future by such tables is reflected in the *caveat* which is a part of the standard jury instruction on mortality tables, and which was given here, Wis J I—Civil 1795: "[The table] is not, however, conclusive or binding upon you as to his actual or probable expectancy of life. Such tables are based upon averages, and there is no certainty that any person will live the average duration of life rather than a longer or shorter period." We cannot agree with Franklin's conclusion or with its characterization of the evidence. As a result, juries are encouraged by the jury instruction to be cautious in the use of life expectancy tables. The obviously speculative nature of any such figure itself ameliorates any error that may occur in that figure's production. *Cf. Tills,* 48 Wis. 2d at 675, 180 N.W.2d at 705.

Second, we are unpersuaded that the table was irrelevant. Questions concerning the relevance of particular evidence are to be determined by the trial court's exercise of discretion if there is a reasonable basis for the trial court's determination. *State v. Denny,* 120 Wis. 2d 614, 626, 357 N.W.2d 12, 18 (Ct. App. 1984). Discretion implies not only the grant of a wide scope of decision to a trial judge, but also an awareness that, on review, the appellate court will accord the trial judge "a limited right to be wrong" and within these limits will not reverse his determination, even if it disagrees with

his ruling. *State v. Pharr,* 115 Wis. 2d 334, 345, 340 N.W.2d 498, 502–03 (1983).

Here, Franklin's counsel objected to the use of the table. His concern was ultimately not with the applicability of sex, age or race, but with Gonzalez's status as an illegal alien. The trial judge heard arguments from all counsel, and while he commented that Mexican and American life expectancy might be different, he was evidently persuaded to allow the use of the table both by the fact that Gonzalez had lived in the United States since approximately 1971 and by his perception that a migrant worker's life expectancy might not be significantly different from that of the sample used to generate the table.[5] In light of this, we cannot say that the trial court abused its discretion in finding the table relevant and admitting it.

Third, we cannot agree with Franklin's characterization of the significance to the jury of this table. Contrary to Franklin's statement in its briefs, the mortality table in question was introduced in the context of determining how many replacement prostheses Gonzalez might need in a lifetime. Moreover, testimony on Gonzalez's future earnings was based upon "the mean earnings of Spanish-origin males with less than eight years of education." Contrary to the implication in Franklin's briefs, therefore, the jury had more than the challenged mortality table upon which to base future damages.

---

[5] The issue of relevancy must be determined by the trial judge in view of his or her experience, judgment and knowledge of human motivation and conduct. *State v. Pharr,* 115 Wis. 2d 334, 344, 340 N.W.2d 498, 502 (1983).

Franklin next contends that the trial court erred in refusing to instruct on strict liability regarding Pyro and Galaxy. We disagree. Under *Dippel v. Sciano,* 37 Wis. 2d 443, 460, 155 N.W.2d 55, 63 (1967), in order to prevail on a strict liability theory, a plaintiff must prove:

(1) that the product was in defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it.

Franklin's brief on appeal fails to provide record citations to establish that these elements were demonstrated at trial. Instructions must be warranted by the evidence and should not be given where the evidence does not support them. *Foss v. Town of Kronenwetter,* 87 Wis. 2d 91, 106, 273 N.W.2d 801, 809 (Ct. App. 1978). We are here unpersuaded that the evidence supported the giving of the strict liability instruction.

We reach the same conclusion regarding Franklin's next argument that the jury should not have been instructed that Franklin had a duty to inspect the park following the fireworks display or that it was not excused from cleaning up later on account of a Galaxy cleanup immediately after the display. Franklin ar-

503

gues that "[i]t should have been up to the jury to decide whether or not the City did, in fact, exercise reasonable care under the circumstances."

We begin this discussion by noting that Franklin's appellate brief conveniently overlooks the fact that the jury *was* instructed that "[b]y reason of the use of fireworks in its park the City had a duty to use ordinary or reasonable care to keep the park safe for the public." This duty was stated twice and explained. In light of undisputed evidence that Galaxy had no contractual obligation to police the area, that Galaxy had made no representation concerning a daylight policing of the area, and that Franklin representatives concluded that Franklin had responsibility for cleaning the park, we conclude that the jury instruction was not error.

Next, Franklin contends that a remark made by the Gonzalezes' counsel during closing argument was prejudicial and warrants a new trial. As was the trial court, we are unpersuaded of the prejudice claimed.

During his closing remarks, counsel for the Gonzalezes commented upon Franklin's closing argument as follows:

He [counsel for Franklin and Home Insurance] said, I'm not convinced, I'm not convinced, I'm not convinced, don't believe this certainty, I don't believe it, it doesn't hit me. And that's not what you're supposed to decide, in Mr. Leib's mind, because you know what, he's paid not to be convinced, he's working for the Home Insurance Company.

504

Franklin claims that this was an improper appeal to prejudice because of its status as a party-corporation.[6] We are unconvinced of prejudice here for two reasons. First, the context of the Gonzalezes' counsel's remark shows that the thrust of it was not directed at revealing the identity of the insurance company but rather at the representative nature of Home's counsel; in other words, the gist of the comment was that the opinion of counsel at trial is both irrelevant and obliged to coalesce with his or her client's position. Second, and more importantly, Franklin does not (and evidently cannot) assert on appeal that the jury did not or would not know who Attorney Leib represented. The jury instruction stated: "The title to this case includes an insurance company as a Defendant." The special verdict submitted to the jury names The Home Indemnity Company as a defendant along with the City of Franklin. In light of this, we are at a loss to fully understand how the mention of the party during closing argument could constitute reversible error.

Penultimately, Franklin contends that the special verdict form was improper because it followed the format of *Foley v. City of West Allis,* 113 Wis. 2d 475, 335 N.W.2d 824 (1983), in asking a separate negligence

---

[6] Gonzalez's counsel defends its comment by contending that it was merely intended to counter opposing counsel's improper comment relating to his personal belief *vel non* in various portions of the testimony. *Cf. State v. Yancey,* 32 Wis. 2d 104, 115, 145 N.W.2d 145, 151 (1966). We point out, however, that such a comment upon belief is not necessarily harmful error. *See Hofer v. State,* 130 Wis. 576, 583–84, 110 N.W. 391, 394 (1907). We need not, however, arbitrate the merits of this dispute in that we are unpersuaded of prejudice in the first instance.

question concerning Gonzalez. Franklin contends that this arrangement confused the jury. In light of the jury's finding of no negligence on Gonzalez's part, we conclude that, even were it error, it is mooted by the jury's determination of no negligence. Moreover, the record demonstrates that, at the instruction conference, when the special verdict form was considered, Franklin waived any objection to this part of it. Although Franklin did submit its proposed special verdict form, at the conference it was evident that the trial judge had fashioned an amalgam of both Franklin's and the Gonzalezes' suggestions. The judge then began to go over the form and stated that he would dictate a special verdict and that "[i]f you don't like it, you can tell me." There is no objection of record at that point in the transcript at which this question arose.

Finally, Franklin prays for a new trial because of the "cumulative effect" of the various alleged errors raised on appeal. Since we have held each of such arguments to be without substance, certainly all of them together do not require a new trial in the interests of justice. *See Larson v. State,* 86 Wis. 2d 187, 200, 271 N.W.2d 647, 652 (1978).

In their cross-appeal, the Gonzalezes contend that the joint offer of settlement entitles them to preverdict interest and double costs. In so doing, they ask us to reconsider the rule set forth in *White v. General Casualty Co. of Wisconsin,* 118 Wis. 2d 433, 438–39, 348 N.W.2d 614, 617 (Ct. App. 1984). We decline to do so, especially in light of *DeMars v. LaPour,* 123 Wis. 2d 366, 366 N.W.2d 891 (1985), which endorses our holding in *White.* Accordingly, we reject the Gonzalezes' cross-appeal and affirm the trial court's determination on this matter.

Costs are denied to both parties.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.