DARWIN L. ZWIEG, District Attorney Clark County
Based upon a number of legislative changes during the last session, you ask the following question:
 If a licensing agency appropriately and validly waives the requirements of section 48.627 (1)(a), does the licensing agency, by virtue of this waiver step into the shoes of an insurance company under section 48.627 (1)(a) Stats. and expose itself to virtually unlimited damages notwithstanding the provisions of section 893.80 (3) limiting recovery in such tort claims to $50,000.00? *Page 2 
Section 48.627 (1)(a), Stats., provides that, before the foster home license is issued or renewed, the licensing agency shall require the applicant to furnish satisfactory proof that he or she has homeowners or renters liability insurance that provides coverage for negligent acts or omissions by foster children that result in bodily injury or property damage to third parties. Paragraph (b) allows the licensing agency to waive the requirement under paragraph (a) under certain circumstances. Paragraph (c) directs the Department of Health and Social Services to conduct a study to determine the cost-effectiveness of purchasing insurance to provide standard homeowners or renters liability insurance coverage for applicants who are granted a waiver under paragraph (b). If the department determines that it would be cost-effective to purchase such insurance, it can purchase the insurance from certain appropriations as set forth therein.
A license to operate a foster home may be obtained from the department or from a county agency or licensed child welfare agency as provided in section 48.75. Sec. 48.62 (1), Stats. Although the duties of your office and your specific question are both limited to concerns over the liability of the county agency, I will discuss both municipal immunity and sovereign immunity because the department also may license foster homes directly.
Prior to 1961, local units of government were generally immune from tort liability. In Holytz v. Milwaukee, 17 Wis.2d 26,115 N.W.2d 618 (1962), the court abrogated the doctrine of municipal immunity. Shortly after the Holytz decision, the Legislature enacted chapter 198, Laws of 1963, which created section 331.43. This statute established liability limitations and a notice requirement for tort actions against local units of government. Through the years, this section has been amended and ultimately renumbered to section 893.80 by chapter 323, section 29, Laws of 1979.
It is within the legitimate power of the Legislature to take steps to preserve sufficient public funds to ensure that the government is able to continue to provide those services which it believes benefits the citizenry. Stanhope v. Brown County,90 Wis.2d 823, 842, 280 N.W.2d 711 (1979). The Legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastatingly high judgments while permitting victims of public tortfeasors to recover their losses up to that limit. *Page 3 
In Sambs v. City of Brookfield, 97 Wis.2d 356, 377-78,293 N.W.2d 504 (1980), the court concluded that the Legislature could reason that a statutory maximum should be imposed on the amount recoverable in those situations where the burden of unlimited liability may be substantial and the danger of disrupting the functioning of local government by requiring payment of substantial damage awards may be great. The court,97 Wis.2d at 376-77, further observed that:
 Government engages in activities of a scope and variety far beyond that of any private business, and governmental operations affect a large number of people. Municipal units of government have hundreds and thousands of employees. Municipal units of government maintain hundreds and thousands of miles of streets and highways and drains and sewers, subject to many hazards; they operate numerous traffic signals, parking lots, office buildings, institutions, parks, beaches and swimming pools used by thousands of citizens. Damage actions against a governmental entity may arise from a vast scope and variety of activities. A claim against a government unit may range from a few dollars to a few million dollars. A municipal unit of government, limited in fund-raising capacity, may lack the resources to withstand substantial unanticipated liability. Unlimited recovery to all victims may impair the ability of government to govern efficiently. . . .
 It is the legislature's function to evaluate the risks, the extent of exposure to liability, the need to compensate citizens for injury, the availability of and cost of insurance, and the financial condition of the governmental units. It is the legislature's function to structure statutory provisions, which will protect the public interest in reimbursing the victim and in maintaining government services and which will be fair and reasonable to the victim and at the same time will be realistic regarding the financial burden to be placed on the taxpayers.
The original creation of section 893.80 (3) was a purposeful legislative decision to limit the amounts recoverable in any action founded on tort against the governmental bodies, officers, agents or employes covered therein. The Legislature has the power, knowledge and capability to change those limitations generally or in any given type of action. I cannot ascribe to the Legislature any intent to make such a change in liability limitations under the recent *Page 4 
amendments to section 48.627 (1). These amendments merely offer a different approach to the problem of ensuring against such incidents.
Although section 48.627 (1)(b) allows the licensing agency to waive the insurance requirement for foster home licensing, this does not support the conclusion that any new exposure to substantive liability was contemplated by the Legislature. It is a cardinal rule of statutory construction that conflicts between different statutes, by implication or otherwise, are not favored and will not be held to exist if they may otherwise be reasonably construed. Moran v. Quality Aluminum Casting Co., 34 Wis.2d 542,553, 150 N.W.2d 137 (1967). Construction of statutes should be done in a way which harmonizes the whole system of law of which they are a part, and any conflict should be reconciled if possible. Muskego-Norway C.S.J.S.D. No. 9 v. W.E.R.B.,35 Wis.2d 540, 556, 151 N.W.2d 617 (1967).
When the Legislature enacts a statute, it is presumed to act with full knowledge of the existing laws, including statutes.Mack v. Joint School District No. 3, 92 Wis.2d 476, 489,285 N.W.2d 604 (1979); Town of Madison v. City of Madison,269 Wis. 609, 614, 70 N.W.2d 249 (1955). Neither the absolute absence of any limitation on liability in section 48.627 (1)(b) and (c) nor the discretionary waiver of the insurance requirement for foster home applicants constitutes a waiver of the liability limits established by the Legislature in section 893.80 (3).
A waiver of statutory limits on liability cannot be "merely inferential" but "must be specific or express." Gonzalez v. Cityof Franklin, 128 Wis.2d 485, 494, 383 N.W.2d 907 (1986). InGonzalez, the court held that the language in a municipality's insurance policy allowing recovery to the full limitation of the policy did not waive the statutory liability limitation of $50,000 set forth in section 893.80 (3). In prior waiver cases the court found the expression of waiver to be explicit and direct. Stanhope, 90 Wis.2d at 852; Marshall v. Green Bay,18 Wis.2d 496, 501-02, 118 N.W.2d 715 (1963).
The language of section 48.627 (1)(b) and (c) makes no reference to governmental immunity or limitations on recovery. Any relationship between section 48.627 (1)(b) and (c) and the statutory limitations on recovery in section 893.80 (3) is merely inferential. *Page 5 
The language of the foster home provisions is not specific or express and does not contain a waiver of governmental liability limits.
When the department performs the licensing function, neither the Legislature nor the courts have overturned or restricted the doctrine of sovereign immunity. Fiala v. Voight, 93 Wis.2d 337,342, 286 N.W.2d 824 (1980). There must exist express legislative authorization in order for the state to be sued. Kegonsa Jt.Sanit. Dist. v. City of Stoughton, 87 Wis.2d 131, 144-45,274 N.W.2d 598 (1979). These two cases hold that no new exposure to substantive liability was contemplated by former sections 270.58 (1) and 895.45 and thus today by a combined reading of sections48.627 (1) and 893.82 (6). Fiala, 93 Wis.2d at 342-47; Forsethv. Sweet, 38 Wis.2d 676, 682, 158 N.W.2d 370 (1968).
In addition to this issue of liability limitations, your question seemingly implies that the licensing agency might become an insurer of sorts when granting a waiver. Neither the express terms of section 48.627 (1) nor any reasonable implication arising thereunder renders the licensing agency any more or less liable than it otherwise might be under established legal principles merely because it waives the insurance requirement. The insurance requirement clearly was intended to benefit the public by providing a more readily available source of money where liability is established under existing principles.
This change in the foster home program protects only against what liability otherwise exists. As a program of indemnity much like that in Fiala, it operates for the benefit of the insured, and, as indicated above, to some extent for the benefit of the public.
Although the Legislature did not say that the Department of Health and Social Services can be sued, it did say that the department in its discretion may purchase insurance to cover these claims. Section 48.627 (3) was amended by 1985 Wisconsin Act 336 to read: "The department is not liable for any act or omission by or affecting a foster child, but may, as provided in this section, pay claims described under sub. (1m) or maypurchase insurance to cover such claims, within the limits of the appropriations under s. 20.435 (4)(cf) and (pd)."
Prior to this amendment effective April 1, 1986, section 48.627
(2)(a) authorized the department to pay claims "for which the insurer, if any, would be liable" clearly putting the state in the *Page 6 
position as an insurer. 1985 Wisconsin Act 24, effective July 1, 1985. Thus, the state has chosen either through payment of claims or purchase of insurance gratuitously to shield foster parents from monetary loss. See Cords v. Ehly, 62 Wis.2d 31, 37,214 N.W.2d 432 (1974). In doing so, the Legislature did not intend to make any change in liability limitations under sections 893.80
(3) and 893.82 (6). "The fact that the state may assume obligations which normally are performed by insurance companies under contracts of insurance does not mean that the state is an `insurer' within the meaning of other statutes concerning insurers." Cords, 62 Wis.2d at 56-57.
Section 48.627 originally provided that the department shall purchase insurance for licensed foster parents to cover the liability of foster parents to the extent that they were not already covered by their own insurance. Ch. 221, Laws of 1979. The statute now provides that such foster parents are obligated to provide their own insurance and any involvement on the part of the department for the payment of claims or the purchase of insurance is permissive rather than mandatory. Therefore, there is a clear legislative intent to narrow the government's obligations rather than to expand them.
DJH:DPJ *Page 7